## McGimpsey, Gill et al. vs. Francis Ramsdale — Appeal from Harrison County.

The practice of raising certificates from locations previously made, and applying them to other locations, has too long prevailed in this country to be now disturbed, although unsustained by law. [17 Tex. 41; 26 Tex. 270.]

When a jury have found against a prior location charged with fraud, and there is any evidence conducing to prove the fraud, their verdict will not be set aside.

The suit in this case was brought by the appellee against

the appellants, McGimpsey, Gill and Hill, in the district court of Harrison county, on the 23d of October, 1843. The petition alleges that the appellee placed his headright certificate for a league and labor of land in the hands of McGimpsey, as county surveyor, on the 25th of October, 1841, and pointed out 700 acres of land or more, which was then vacant, and required the said McGimpsey to survey the same under said certificate, which he promised to do; that said McGimpsey, afterwards combining and confederating with Gill, pretended that he had surveyed the land for Gill, on the headright certificate of one Jackson Page, and procured the field notes to be recorded for Gill; that the survey was not made for Gill; that the proceedings were fraudulent and void; and that he afterwards applied to David Hill, county surveyor, to survey the land upon his certificate, which he refused to do in consequence of said fraudulent survey for Gill. The petition prays that McGimpsey, Gill and Hill be required to answer; that Gill be enjoined from obtaining a patent for the land; that his field notes be cancelled; and that the tract of land be surveyed, and the field notes recorded for the petitioner.

McGimpsey answered: that, as county surveyor, he had in his office the headright certificate of the appellee for location, about the 25th of March, 1841; and that, by *his* direction, he filed the same on a part of the land claimed — the balance, 320 acres, having previously been appropriated by a survey under his own headright certificate; that afterwards the appellee agreed to give up his said selection, provided he (McGimpsey) would point out to him other lands that he could file on, which he (McGimpsey) did, and that Ramsdale then directed him to raise his certificate from said land, and file the same on the land thus pointed out, which he did, to the extent of 1,280 acres; that Gill afterwards made application to him, as county surveyor, for the land, and filed thereon, in his office, the headright certificate of Page; that he and Ramsdale subsequently had a settlement, in which Ramsdale refused to allow him anything for surveying the land which he now claims in his petition, and did not then set up any claim to the land; and that he, as surveyor,

acted in good faith, and denies all combination and confederacy, etc.

Gill, in his answer, denies all confederacy, etc.; alleges his location of the land under Page's certificate; and states that, from information, he believes the matters stated in McGimpsey's answer to be true.

Hill, in his answer, states that Ramsdale had previously, in 1838, located his headright certificate on other land on the Sabine, and that he is advised that he had no right afterwards to make the location of the land claimed in his petition; that after making the said last location, he understood he had agreed with McGimpsey to raise the same, and did remove his certificate and located a part of it elsewhere; and that, upon the location and survey, on the certificate of Page, a patent had been given for the land.

After the filing of the answers of the defendants, Ramsdale amended his petition, describing his file on the land by metes and bounds, and stated that in October, 1842, he procured to be entered on the file-book of the county surveyor a description of the land which he claims.

To this amended petition the defendant, McGimpsey, filed an amended answer, alleging that his own headright certificate was located and surveyed on a part of the land claimed before Ramsdale's file was made; and that his survey began at the corner claimed by Ramsdale, in his amended petition, as his beginning corner; and that Ramsdale never did file, or pretend to file, with him, as county surveyor, on the 320 acres surveyed under his certificate, but only filed on the residue of said land; and that after the raising of Ramsdale's certificate from said location, he united his survey with the rest of the land, and returned and recorded the field notes of both tracts as surveyed for Gill under Page's certificate.

It was proved at the trial that the survey of the 320 acres for McGimpsey was made a few days before Ramsdale made his file, and that the residue of the vacant land was then surveyed for Ramsdale, but that Ramsdale's survey did not include the 320 acres previously surveyed for McGimpsey; that the

record of the survey made for Gill on Page's certificate purported to have been made on the 26th March, 1841, one day after the survey was made for Ramsdale; and that it included the lands previously surveyed for McGimpsey and Ramsdale, and embraced the land contained in the file of Ramsdale made in October, 1842, as set out in his amended petition; that to Gill's survey the names of two persons were marked as chain carriers, one of whom testified that he never carried the chain in making a survey on Page's certificate, but that he carried the chain in making the survey for McGimpsey and another survey, one line of which constituted a line of the survey said to be made under Page's certificate.

It was also proved that after the defendant, Hill, became the county surveyor of Harrison county, in the place of McGimpsey, to wit, in October, 1842, Ramsdale made the file in his office which he set out in his amended petition, covering all the land in controversy; that he stated at the time he had agreed to give up the land he had filed on with McGimpsey, under a contract that he (McGimpsey) was to select and survey other land for him, but that he had treated him badly, and had not done it, and that he would now hold on to his former file. It was farther proved that Ramsdale located his headright certificate in 1838, on land on the Sabine, and afterwards said he did not like the location; and in 1839 he raised his certificate from the land, and sold the location to another. There was a verdict and judgment for Ramsdale for the land in controversy.

It appeared, on the trial, that a patent had issued upon the survey made on Page's certificate, after the commencement of this suit, but in respect to which no decree was rendered.

WEBB for appellants.

J. P. HENDERSON for appellee.

Mr. Justice LIPSCOMB delivered the opinion of the court, Mr. Justice WHEELER not sitting.

In this case, it is very apparent from the record that the

location of McGimpsey's headright for three hundred and twenty acres of land had the preference over Ramsdale's, and ought, from the evidence, to have been so found by the jury as there was no evidence adverse to this claim of preference. If it had been improperly surveyed, this should have been corrected without the loss of his preference. The paper testimony shows that Page's headright of one-third of a league had also a preference, from priority of location; but this location was charged with fraud, and the jury having found against it, and in favor of Ramsdale, there is no ground for setting their verdict aside, as there was evidence conducing to prove the fraud.

If the question was a new one, I should feel strongly inclined to deny the right of Ramsdale to have raised his former location; but the practice commenced with our land system, and to upset it now would disturb land titles to an incalculable extent. It is supposed, too, to be sustained by precedent from other states, in which it had been equally unfounded in any express provision of law, but originated in liberality and indulgence to holders of warrants. It would seem that the court could have, and ought to have, cancelled by its decree the patent for Page's headright of one-third of a league of land, so as to have enabled him to have made another location. For the reason that this ought to have been done, and also that McGimpsey's headright for three hundred and twenty acres ought to have been preferred, the judgment and decree must be reversed, and the cause remanded, for the purpose of reforming the decree in conformity with the opinion here expressed.