## Charlotte T. Jones et al. v. J. B. Lee et al.

### No. 9.

**An Administrator in 1852 Had no Right to Abandon a Survey Belonging to the Estate.**

J. W. Smith died in 1845, leaving widow and children; in 1847 the widow was appointed administratrix of the estate. At his death, Smith and Enoch Jones owned in common the Morales survey for league and labor, in Frio County, located under certificate number 489. Prior to 1852 Jones and the administratrix lifted the certificate and located it upon lands in Comal County. In 1852 the administratrix, under orders of the Probate Court, sold to divers purchasers the Comal County location, and Jones was purchaser of part, the extent not developed. In 1861 Jones obtained, as owner, a duplicate of the certificate 489 and relocated it upon the land covered by it at the death of Smith, and the land was subsequently patented under this location. In the Probate Court in 1854, in an application for partition, the Frio County land was allotted one-half to the estate of Smith and one-half to Jones. In 1856, in a suit for partition in the District Court between heirs of Smith, Jones assenting, the decree of the Probate Court was recognized. This action was brought in 1887 by heirs of Smith against heirs of Jones for one-half of the said league and labor in Frio County. Heirs of Jones and intervenors asserted title by reason of having bought the Comal County survey upon which the certificate had been located, the title having failed .......................................................... 47, 48

*Held:* 1. The administratrix took the survey as real estate as trustee, and she had no power to abandon the survey for purpose of relocating the certificate............................................................. 49

2. The certificate adhering to the Frio County survey, could not be used to secure land in Comal County, and the attempted relocation was void, from which results the absence of any claim to the land sold in Comal County by the administratrix, and that nothing of right in the certificate passed to the purchasers at the administratrix sale......... 49

3. The relocation in 1861 of the land under the duplicate enured to the benefit of the Smith estate to the extent of Smith's interest therein at his death...................................................... 44

4. Jones was tenant in common with Smith, and his acts in the matter are considered as for the benefit of the common estate in the land.. 45

5. The forfeiture of the original survey by reason of failure to return the certificate, with survey, to the General Land Office on or before August 31, 1853 (Paschal's Digest, article 4562), did not validate the attempted abandonment of the Frio County survey by the administratrix, made prior to 1852, nor affect the ownership of the certificate. 51

6. Jones and the other purchasers at the sale of the Comal County location taking no interest in the certificate 489, can hold nothing in the relocation by reason of their purchase of the void claim to the land in Comal County; it accrued to the original owners, Jones and the Smith estate...................................................... 51

Error to Court of Civil Appeals for Third District, in an appeal from Bexar County.

*L. N. Walthall*, for plaintiffs in error, Charlotte Jones et al., cited: Const. 1845, art. 4, sec. 15; Act of 1848, Pasch. Dig., art. 1207; Rev. Stats., art. 1337; Phillipowski v. Spencer, 63 Texas, 604; Horton v. Hamilton, 20 Texas, 610; Hunt v. Butterworth, 21 Texas, 133; Linn v. Arambould, 55 Texas, 611; Eastham v. Sallis, 60 Texas, 576; Burnett v. Sullivan, 58 Texas, 535; Martin v. Brown, 62 Texas, 487; Poor v. Boyce, 12 Texas, 440; Bartlett v. Cocke, 15 Texas, 479; French v. Grenet, 57 Texas, 273; Howard v. North, 5 Texas, 316; Hatch v. Garza, 7 Texas, 290; Teas v. McDonald, 13 Texas, 357; Brown v. Lane, 19 Texas, 207; Morton v. Welborn, 21 Texas, 772; Andrews v. Richardson, 21 Texas, 296; Johnson v. Caldwell, 38 Texas, 219; Walker v. Lawler, 45 Texas, 532; Dufour v. Camfranc, 11 Martin Rep., 610; Bright v. Boyd, 1 Story, 478; Scott v. Dunn, 1 Dev. & Batt. Eq., 426; Springs v. Hanen, 3 Jones' Eq. (N. C.), 95; Volli's Heirs v. Fleming's Heirs, 29 Mo., 152; City of Brenham v. Bank, 144 U. S., 173.

*A. H. Willie*, for self, Cleveland, and Wurzbach, intervenors.

*Robert Summerlin*, for Buquor et al., intervenors.

*H. B. Barnhart*, for defendants in error

HENRY, ASSOCIATE JUSTICE.—In this cause we allowed a writ of error to the Court of Civil Appeals of the Third Supreme Judicial District upon the petition of the appellants. The suit was brought by the appellees against the appellants, to establish their title to an undivided one-half interest in a league and labor of land on the Rio Frio, in Frio County, patented in the name of Pedro Flores Morales. The plaintiffs alleged that appellants own the other one-half of said land, and they prayed for the partition thereof.

The defendants pleaded not guilty.

P. L. Buquor and the heirs of C. F. King intervened in the cause, alleging that they owned an undivided one-half interest in the original certificate, number 489, issued to the said Pedro Flores Morales. They specially pleaded the facts of their title, as follows: That on the —— day of February, 1852, said certificate 489 was located in Comal County, covering the town of New Braunfels and land adjacent to said town; that subsequently the said Buquor and Smith purchased "an interest in said certificate and land, as will more fully appear from a deed herein filed with and attached to the depositions of P. L. Buquor, marked exhibit A, and prayed to be taken as a part of this petition;" that subsequently said certificate was floated and relocated in Frio County, on the lands in controversy; that intervenors are by virtue of said purchase the legal and

equitable owners of an undivided one-half of said lands, they having paid the purchase money.

The plaintiffs filed a general demurrer, a general denial, and a special answer to the petition of intervention, but the record fails to show that the demurrer was ever called to the attention of the court, or acted upon.

The special answer to it alleges, in substance, that the claim of the intervenors is based upon a pretended deed, executed by M. J. Lee, administratrix of the estate of J. W. Smith, deceased, in the year 1852, purporting to convey to said Buquor and one King certain town and farm lots in Comal County, about where the town of New Braunfels now stands; that the purchase money was not paid; " that said land was soon after such sale lost to the estate of said Smith, and by mutual agreement between said administratrix and the purchasers at said sale " it was annulled.

The case was tried by the judge without a jury, and a decree was rendered in favor of the plaintiffs for one-half of the land, that the intervenors take nothing, and for partition between plaintiffs and defendants.

The Court of Civil Appeals affirmed the judgment of the District Court.

John W. Smith died in 1845. The Pedro Flores Morales headright certificate was owned equally by him and Enoch Jones. It was located by them on the land in controversy. Plaintiffs (appellees) are the heirs of the said John W. Smith. Enoch Jones died on the —— day of ——, and the defendants in the District Court (appellants) are his heirs and assignees.

Maria Jesusa Lee, who was the widow of John W. Smith, was administratrix of his estate from 1847 to 1856. At some date previous to the 4th day of May, 1852, she and the said Enoch Jones withdrew the said land certificate from its location on the land now in controversy, situated in Frio County, and filed it upon a portion of the Baron de Bastrop grant in Comal County.

On the 4th day of May, 1852, the administratrix, in obedience to an order of the Probate Court of Bexar County, sold the land so located in Comal County to Enoch Jones and Buquor and King and divers other persons.

The Court of Civil Appeals finds that the purchase money of the land so sold to Enoch Jones and to Buquor and King was paid, and that the lands by them respectively purchased were conveyed to them by the administratrix; the sales to them having been first confirmed by the Probate Court. It appears that none of the other bidders at said sale complied with the terms of sale or received conveyances. The intervenors now claim the lands purchased by Buquor and King.

The land was sold in lots, and the only description anywhere given of them, in connection with said sale, is by the lot numbers. After enumer-

ating the lots sold by the lot numbers, the record shows that the whole of the remainder of the league and labor in Comal County was sold and conveyed to Enoch Jones. The size of the lots is not shown; nor is there anything in the record by which the acreage or quantity of the land bid off or sold to any purchaser can be ascertained. The noncomplying bidders represent a large number of lots, but whether they included much or little of the land does not appear.

In the year 1854 one of the heirs of John W. Smith filed a petition in the Probate Court of Bexar Court, praying for a partition and account. The administratrix answered the petition, mentioning the property that belonged to the estate, including the land now in controversy, which she designated as being located by the Pedro Flores Morales certificate, and claimed for the estate an undivided one-half of said land as tenant in common with Enoch Jones. The said Jones filed his plea of intervention in said proceeding on the 28th day of April, 1854, in which he alleged that he was a tenant in common with said estate in certain enumerated lands and property, but he did not include nor mention the land now in controversy.

In 1854 a decree was entered in said proceeding by the Probate Court, reciting, " that the estate of John W. Smith is the owner of an equal undivided one-half of the league and labor of land situated on the Rio Frio, the headright of Pedro Flores Morales, by virtue of certificate 489, and held in common with Enoch Jones, he being the owner of the other half, and it should be partitioned." It does not appear that commissioners were appointed, or that any partition was ever made under this order.

In July, 1854, some of the heirs of John W. Smith filed a suit in the District Court, against other heirs, the administratrix, and Enoch Jones, for a partition between Jones and the estate, as well as between the heirs. In that petition plaintiffs included the land now in controversy, describing it as follows: " One equal undivided half of one league and one labor of land, held in common with Enoch Jones, the headright of P. F. G. Morales, on the Rio Frio."

To this suit the defendant Jones filed the following answer: " Enoch Jones, for answer in the above cause, is willing to recognize and have confirmed the former partition between the estate of John W. Smith and himself, and he prays the court to confirm said partition."

On the 24th day of July, 1856, a final decree was entered in said cause, confirming " the divisions and partitions heretofore made by order of the Probate Court between the said estate and the said Enoch Jones," etc.

In the year 1861 Enoch Jones procured from the Commissioner of the General Land Office a duplicate of the said Pedro Flores Morales certificate, number 489, which he caused to be relocated on the lands now in controversy, upon which patents were issued in the name of said Pedro Flores Morales.

The district judge based his judgment upon the conclusion of law, " that the matter is res adjudicata, and that the defendants are estopped." The Court of Civil Appeals concurred in that conclusion.

If it had been shown that at the dates of the proceedings in the District and Probate Courts, or either of them, the Morales certificate was located upon or legally or equitably attached to the land in controversy, we would approve this conclusion, so far as the appellants are concerned.

It is an agreed fact, that originally the said certificate was equally owned by John W. Smith and Enoch Jones, and that before the death of Smith they had located it on the land in controversy; but it does not appear that there was ever any survey made or field notes returned to the General Land Office in pursuance of that location.

It does appear that before the 4th day of May, 1852, Enoch Jones and the administratrix of John W. Smith withdrew the certificate from said location and caused it to be located on the land in Comal county, where it remained until 1861, when Enoch Jones, who then claimed to be its sole owner, procured a duplicate of it and caused it to be again located on the land in controversy.

Each of said suits was commenced subsequent to the date of the withdrawal of said certificate from the land in controversy, and the final judgment in each was rendered several years before it was again located on the said land. In other words, during the period of said litigation the said certificate was not on the land in Frio County, then and now in controversy.

It is conceded that the title to the land is the result of the location and survey of the said certificate. If it was never withdrawn from the first location, and if said location was in no manner lost nor abandoned, the title to both the certificate and the land was in issue in said suits, and was finally determined, as to the parties to them, in favor of the plaintiffs (appellees) as the heirs of John W. Smith.

If, on the other hand, the first location was lost or abandoned, either by the voluntary action of its owners or by the omission of some act required to keep it in force, then the title to the land was not divested out of the State until the location was made of the duplicate certificate in 1861, and could not therefore be affected by the litigation that had terminated some five years before.

The fact that the heirs of John W. Smith recovered against Enoch Jones, in 1856, a judgment for land that neither party then owned, would not prevent either party from subsequently acquiring the title.

In such case the present ownership of the land would not depend upon the judgments rendered in 1854 and 1856, but upon the ownership of the certificate when the location in 1861 was made.

It becomes important to determine whether or not the location of the certificate made in the lifetime of John W. Smith was lost, so that during

the period of time embraced by said suits it was not attached to the land in Frio County. And this brings us to consider, in the first place, whether the withdrawal of certificates once located, and their relocation, was forbidden by any law in force in 1852 or previous to that time.

The first law on the subject was the Act of the 30th of August, 1856. By the second section of that act it was made unlawful for any surveyor " to allow the holder of any land certificate or scrip, or other legal evidence of title to land, to lift or float the same after entry, location, file, or survey, when the same is not made upon land previously appropriated. But when a conflict of entries, files, locations, or surveys occurs, upon a proper showing of the facts, which may be by the certificate of one of his deputies, or from his own knowledge, he shall allow the party having his entry, file, location, or survey of subsequent date to lift so much thereof as shall be affected by such conflict." Pasch. Dig., art. 4574.

Before the passage of this law the right to withdraw certificates from locations and locate them elsewhere, or to "float" them, was universally recognized, and was practiced with the sanction of the courts. The statute quoted was not intended to be merely declaratory of what the law had previously been. It established a rule of action for the future, and did not therefore affect the right to withdraw the certificate from the first location made upon the land in controversy.

As early as the year 1848 Justice Lipscomb, in the case of McGimpsey v. Ramsdale, 3 Texas, 344, used the following language in regard to the right to float a certificate: " If the question was a new one, I should feel strongly inclined to deny the right of Ramsdale to have raised his former location; but the practice commenced with our land system, and to upset it now would disturb land titles to an incalculable extent. It is supposed, too, to be sustained by precedent from other States, in which it had been equally unfounded in any express provision of law, but originated in liberality and indulgence to holders of warrants."

In the case of Hollingsworth v. Holshousen, 17 Texas, 40, Justice Wheeler said: "A party may abandon his location and survey at any time before his certificate is merged in a patent, provided he does not thereby interfere with the rights of any other person."

In the case of Johns v. Pace, Justice Bell referred to the above cases, and said, that they " have settled that the owner of a land certificate which has been located may abandon the location at any time before the certificate is merged in a patent, provided he does not thereby interfere with the rights of any other person." 26 Texas, 270.

But it is contended that an administrator did not have the power to abandon a location; that in this case the original location of the certificate having been made by John W. Smith, the certificate was merged into the land, and that his administratrix did not have the right to withdraw it, and thus convert real estate into personalty.

The contention seems to be plausible. It is well settled by the decisions of this court, that an unlocated land certificate is personal property, and that while located it is merged into the land, and thereby becomes real estate. Whether the property of an estate belongs to the one class or the other, leads to results materially different, in more respects than one; as, for instance, under our statute of descent and distribution.

It may not be evident, however, that the authority of an administrator to convert personal property into real, by locating a certificate, is better defined than his power to change real into personal estate by withdrawing a located certificate. A land certificate is so different from tangible personal property, and is so readily converted into land, without which it can not possibly ever be of any value, that it has been found impossible to arbitrarily classify it as personal property without leading to some incongruities in the application of some of the rules relating to property, of which the case before us may, to some extent, furnish an illustration.

The right to make more than one location of a certificate by abandoning those once made, is an important privilege, and may very properly enhance the value of the certificate. The first location may have been unwisely made; it may have been made on inferior land, or land that will not appreciate in value so readily as some other location will. By the loss or abandonment of the claims of others, new and better locations may be offered; or it may be found that others claim a prior right to the first location. In such cases, and many others, it is difficult to concede that when the law recognized the existence of a general right of the owner to withdraw a certificate from a location once made, and to place it elsewhere, the power should not survive to his legal representatives to do the same thing. No good reason is apparent why an administrator should have been compelled to keep a certificate located upon a contested or worthless claim, when vacant and valuable lands were accessible.

We think that the decision of this court in the case of Poor v. Boyce, 12 Texas, 447, 448, is fairly in point on this question. In that case Justice Wheeler said: "To the argument, that the survey vested title in the heirs which could not be divested by the act of the administratrix, it is sufficient to say, that the latter had the same right to raise the location for the purpose of making one elsewhere, which she may have deemed more advantageous to herself and the heirs, that she had to apply for and obtain the certificate and make the location in the first instance; and her own interest in the matter of the location was a sufficient guaranty against an abuse of the trust. The interest of the heirs required that she should have the same authority and discretion to control the incipient steps in procuring the title which any other party might lawfully exercise in obtaining title to land, being responsible for a judicious and faithful discharge of the trust. If it was shown that she

had combined with others to defraud the heirs, or had abused the trust to their prejudice in removing the location, her acts might be annulled and the original location reinstated, provided innocent third persons were not prejudiced thereby.''

While there is no express finding to that effect, the record before us shows that the certificate was the community property of John W. Smith and the wife who subsequently became his administratrix. It results that she owned one-fourth of the certificate, and that its withdrawal from the location in Frio County and location in Comal County were the acts of the owners of a three-fourths interest in it and of an administrator who represented the remaining one-fourth.

It is true that neither the reason nor the wisdom of the change is made to appear by the record before us; but, on the other hand, it does not disclose that there were not reasons sufficient to make both the withdrawal and new location prudent and proper. In the absence of all evidence, it is but reasonable to indulge the presumption that the administratrix discharged her duty, and that the circumstances under which she acted justified her conduct.

The question, in its application to the case before us, has a double aspect: First. As to whether the certificate was merged in the land in Frio County during the pendency of the above mentioned suits so as to make the judgments in them res adjudicata of the title of the certificate, as between the parties thereto. Second. Whether said certificate was lawfully applied to the land in Comal County in May, 1852, so as to make the sale of that land by the administratrix pass to the purchasers the title to the certificate, when it failed to vest in them the title to the land.

The case of Poor v. Boyce, above referred to, was decided in this court in the year 1854, and it was well calculated to justify the conclusion, that administrators as well as others could withdraw certificates and locate them elsewhere; that the purchasers under the second location would acquire the land as well as the certificate; and that the withdrawn certificate was no longer attached to the first location. The certificate could not lawfully hold land at both places at the same time.

What was the natural and probable construction of the language of that opinion with regard to the right of administrators to voluntarily float certificates, is not open to a doubt, and it may be as truthfully said, as was done in the case of McGimpsey v. Ramsdale, '3 Texas, 348, that '' to upset it now would disturb land titles to an incalculable extent.''

But there is another view of the question, from which we think it must follow that before the beginning of the year 1854 the land certificate had ceased to be attached to the land in Frio County.

On the 10th day of February, 1852, the Legislature passed an act requiring that '' the field notes of all surveys made previous to the passage of this act shall be made out and returned in the manner now required

by law to the General Land Office on or before the 31st day of August, 1853, or they shall become null and void, and the said surveys shall become vacant land, and be subject to be relocated and surveyed as in other cases, by any person holding a genuine land certificate or other legal evidence of claim to land." Pasch. Dig., art. 4562.

The eighth section of the same act read as follows: "All lands heretofore located by virtue of any genuine claim to land shall be surveyed within twelve months from the passage of this act, and all lands which may be hereafter located shall be surveyed within twelve months from the date of location, or the said location in either case shall be null and void, and the land be subject to relocation and survey as other vacant and unappropriated land."

The record shows that the location in Frio County was subject to the provisions of this act, but it does not show that any survey was ever made. If there could be gathered from it even an inference that a survey was made, the case would still be utterly without evidence that the field notes of such survey were ever returned to the General Land Office. If the law was complied with in either respect, the proof was of record, and it should have been produced. There is no suggestion of the loss or destruction of the records.

In the agreement of counsel filed in this cause, and in the report of the auditor in cause 1091 in the District Court, the word "survey" appears in connection with the Frio County land, but its use was evidently intended to specify in a general way the body of land located, and not to prove an important fact in issue. No boundaries of such a survey are anywhere referred to. If there had been in fact a survey, and it was deemed important to report upon it in one case or to include it in the other, nothing was easier than to directly so declare in so many words, rather than leave it to be inferred from an indefinite designation of the land as "a survey." It is to be noted, however, that the record does indicate at more than one place that a survey of the location in Comal County had been made.

A survey of a location, as well as the return of the field notes to the General Land Office, could have been indefinitely postponed, without the loss of any right, before the passage of the Act of 1852, and the mere passage of the law indicates that such a practice existed. It is not likely that a survey of the Frio land was made, or the field notes returned after the passage of the Act of 1852, because all of the parties interested had concurred in withdrawing the certificate from that location, and had placed it in Comal County, and were dealing with it there. It would be contrary to reason to conclude that they were at the same time surveying the Frio land or returning its field notes to the General Land Office.

A great obscurity attends both the transactions about the certificate

and the court proceedings in regard to the land. Why one location was abandoned and another one made, and why neither was perfected, is in no respect explained.

When the probate proceeding occurred the administratrix had not only co-operated in withdrawing the certificate from the Frio County location, and in its location in Comal County, but she had, by the approval of the court, sold and conveyed the land held by it in the last named county. She, it is true, subsequently by her answer, brought the Frio County land into the Probate Court for partition; but it is to be remarked that she there described it as " patented " land, and not as held by said certificate. Its being patented land was evidently a mistake; but its being so styled serves to show that the proceedings were not being conducted upon the theory that the title to the said land certificate was in issue, or that it was located on the land then being partitioned. The only description of or reference to the land in the partition suit 1091 in the District Court was made by a reference to the probate order and to the report of the auditor. The report of the auditor expressly refers to the land in Frio County, but it says the same certificate number 489 had been " raised."

The statute of 1852 has been repeatedly recognized and literally enforced by decisions of this court,

In the case of Holloway v. Holloway, 30 Texas, 177, Justice Smith said: " From the decisions of this court we are satisfied that the location of 1844, if not surveyed as directed by the Act of February 10, 1852, became null and void on the 11th day of February, 1853, and that it will not support this action."

The different sections of the act were quoted by this court in the case of House v. Talbot, 51 Texas, 468, and their effect was announced by Justice Bonner in the following language:   " This was a necessary and reasonable provision, and the evidence shows that it was the misfortune of plaintiff's intestate not to have complied therewith, and hence to have forfeited his location."

In the case of Cassin v. O'Sullivan, 61 Texas, 595, it was said by the present Chief Justice, that " after twelve months from Brown's original location, no surveys of the land having been made, nor steps taken to compel surveys, the land again became subject to location by Brown or any other person."   See Snider v. Methvin, 60 Texas, 500; Tucker v. Murphy, 66 Texas, 355.

In the case of De la Garza v. Cassin, 72 Texas, the Chief Justice, referring to the Act of 1852, said:   " The effect of the statute is to declare absolutely void a location not followed by a survey within twelve months after entry, and to restore the land once covered by it to the mass of unappropriated public domain, and to subject it to relocation by any person."   See Stewart v. Lapsley, 11 Texas, 41; Frederick v. Hamilton, 38 Texas, 343; Bone v. Walters, 14 Texas, 568.

The second section of article 10 of the Constitution of 1869 declared, that "all surveys of land heretofore made, and not returned to the General Land Office in accordance with the provisions of an act entitled 'An act concerning surveys of land,' approved February 10, 1852, are hereby declared null and void."

Section 18 of article 16 of the Constitution of 1876 provides, that no "rights or actions which have been divested, barred, or declared null and void by the Constitution of the Republic and State shall be reinvested, renewed, or reinstated by this Constitution; but the same shall remain precisely in the situation in which they were before the adoption of this Constitution, unless otherwise herein provided."

Thus we find that by clear and emphatic provisions of the statute, approved and enforced by a long line of decisions of the courts, strengthened by the express recognition of the Constitution, located land certificates, since the Act of 1852, became detached unless they were surveyed and the field notes were returned to the General Land Office as directed by that act.

It is as necessary for a party who claims land through the location of a certificate to show compliance with that act as it is for him to prove the location itself. The act contains no exceptions, and none can be engrafted upon it. It applies to all certificates and all surveys. The Legislature was not bound to relieve from its provisions infants nor married women, guardians nor administrators, and it did not do so.

Upon this aspect of the case, Justice Lipscomb used the following language in the case of Upshur v. Pace, 15 Texas, 533: "There was a defense set up that could not certainly have been seriously insisted upon. It was, that the Clark certificate had been assigned to one Britton, and that the location was made for him under the Clark certificate; that he had died before the time limited by the statute for returning the field notes into the General Land Office, and that his heirs were minors, and that it was not competent for the Legislature to impose upon them the forfeiture declared by the statute. We believe there is nothing in this objection."

There is no escape from the conclusion, that an administrator could detach a located certificate from the land by a failure to comply with the provisions of the Act of 1852. If such representative voluntarily refrained from complying with that law, the certificate thereby became released from the land, and could be lawfully located elsewhere. With such a provision in the law, we can not see a reason, a necessity, nor an advantage in holding that an administrator could not accomplish the same result by the direct act of voluntarily withdrawing the certificate a few months earlier, if he should think that would be advantageous to the estate. If the administrator should act improperly, or should negligently

cause a loss to the estate, an action on his bond would lie in favor of those who had the right to complain.

We think it is clear, that after the 10th day of February, 1853, the land certificate in question was not attached to the land in Frio County until after the conclusion of the proceeding in the Probate Court and the suit in the District Court.

The record shows that both the Comal County land and the Frio County land were inventoried and claimed as part of the estate of John W. Smith, under a location of the Pedro Flores Morales certificate, number 489.

The petition of the administratrix for the sale of the Comal land, and the order for its sale made by the Probate Court, expressly refer to it as being held under said certificate; while the order of partition, made in the same court and referred to in the judgment in the District Court, of the land lying in Frio County, describes that as being held under the same certificate.

It is evident, however, that in all of said proceedings the land itself was the subject of adjudication, and the question was whether a particular body of land should be sold in one instance or partitioned in the other, and not whether the said certificate was merged in the one location or in the other, nor who had the title to the certificate.

The questions presented by the pleadings and determined by the judgments were the sales and partition of distinct parcels of land, and not the sources of their titles. If it had been otherwise, we might have been required to decide between the conflicting judgments, without resort to extraneous evidence, however conclusive that may be, if all the parties to this suit had been represented in the others. The pleadings in the case before us are in harmony with this view of the case.

The plaintiffs specially pleaded the judgments of the Probate and District Courts as estoppels, but upon the ground that the land in Frio County was adjudged to be held by the estate in common with Enoch Jones, and not that said judgments established that said certificate was merged in said land. The allegation in regard to the Probate Court proceeding is, that " the said land herein sued for was adjudicated and determined to belong to the estate of John W. Smith, deceased." The allegation in regard to the judgment in the District Court is, that it gave " said land to said estate of John W. Smith, deceased, confirming the said decree of the County Court."

Another reason why said judgments can not, by their mere recitals, control the status of the certificate, lies in the fact that they were partition proceedings, and all of the parties in interest were not then before the court. The intervenors were not represented nor bound by them. All of the parties in interest not being bound, none of them were.

The written agreement filed in this cause is, that said land certificate

was filed upon the land in Comal County " when Mrs. Maria J. Lee, as administratrix of the estate of John W. Smith, deceased, made sale of the former lots described in the deed of said date executed by said administratrix to Enoch Jones."

It shows that it was after said sale of the Comal land that the certificate was removed therefrom by Jones. Under repeated decisions of this court, the purchasers of the Comal land acquired the title to the certificate if it was then filed upon the land, notwithstanding they did not acquire any title to the land itself. Hearne v. Gillett, 62 Texas, 23; Hines v. Thorne, 57 Texas, 102; Robertson v. Du Bose, 76 Texas, 8; Abernathy v. Stone, 81 Texas, 433; Ansaldua v. Schwing, 81 Texas, 198.

The interest of each purchaser in the certificate would be in proportion to the quantity or acreage purchased by him at that sale, and subsequently confirmed and conveyed to him.

The title to the land in Frio County, and now in controversy, was first acquired from the State in the year 1861 by the location, survey, and subsequent patent under the duplicate Pedro Flores Morales certificate, and the title enured to the owners of said certificate.

It was agreed that at the death of John W. Smith an undivided one-half of it belonged to the community estate of himself and his wife, Maria, who is one of the plaintiffs in this suit. The said Maria and her coplaintiffs, who sue as the heirs of said John W. Smith, claim and seek to recover an undivided half of the land. They established their claim through the agreement that they owned one-half of said certificate, if the evidence had closed there. But the evidence introduced in regard to the Comal sale showed that both the defendant, Enoch Jones, and the intervenors had purchased some of said land, and consequently own some portion of the Smith half of the certificate. We think that under the circumstances of the case they should have gone further, and have proved what number of acres they so purchased, so that it could have been ascertained what number of acres of the certificate, and through it of the land in controversy, they so acquired.

The record shows that they did not purchase the whole of the estate's interest, though it may be that they purchased the larger proportion of it. For whatever portion of the estate's one-half interest in the certificate a sale of the land was not consummated because the purchasers failed to comply with the terms of the sale and get conveyances, the estate still holds an interest in the land patented by virtue of said certificate.

It would seem that the defendant and the intervenors should be able to prove the quantity conveyed to them.

The plaintiffs are in a situation to make out their case by proof of their interest in the certificate; and if the proof rests there, they must unquestionably recover. The defendants do not (much more the intervenors do not) defeat plaintiffs' right to recover merely by introducing deeds show-

ing that they have acquired some unnamed and indefinite quantity of plaintiffs' land. If the plaintiffs' suit was to recover the Comal land, then the evidence introduced by defendants and intervenors might be sufficient. But the description of that land is wholly inapplicable to the land in controversy. It serves only as a basis, by acreage, to show the extent of the right acquired in the land in controversy. Without proof of some quantity, the evidence is too indefinite to have any effect given to it, when the issues joined are such as the record now before us presents.

The views expressed by us as to the burden of proof upon the last named issue would lead to an affirmance of the judgment; but we do not think that such would be a just nor an entirely correct disposition of the case. The controlling question upon which the judgment rendered in the District Court was rested was not decided there according to the views entertained by a majority of this court, nor correctly, as we think; and we therefore conclude that the judgments of the District Court and the Court of Civil Appeals should be reversed, and that the cause should be remanded, and it will be so ordered.

*Reversed and remanded.*

Delivered April 27, 1893.

### DISSENTING OPINION.

STAYTON, Chief Justice.—The lands in controversy were located in or prior to the year 1845, by John W. Smith and Enoch Jones, by virtue of the land certificate under which it was subsequently patented, and their ownership of the certificate at the time of its original location is a conceded fact.

John W. Smith died sometime after the certificate was located, but during the year 1845, and his widow, Mrs. Lee, became the administratrix of his estate sometime in the year 1847, and so continued until the year 1856.

At sometime prior to February 26, 1852, Enoch Jones and the administratrix withdrew the certificate from the survey in controversy and located it upon a part of the grant of land made to the Baron de Bastrop, in Comal County; but no right was so acquired, presumably because the location was made on land not subject to location, and in 1861 Enoch Jones obtained a duplicate of the certificate and relocated that on the lands in controversy.

In 1852, Mrs. Lee, as administratrix, acting under order of the Probate Court, sold her land in Comal County located by virtue of the certificate, and Enoch Jones bought at that sale, perhaps, the greater part of it; and on the right to the certificate thus claimed to have been acquired, and its relocation on the lands in controversy, rests the claim of the heirs and vendees of the heirs of Enoch Jones.

Plaintiffs are the heirs and widow of John W. Smith.

The judgment held by the Court of Civil Appeals to have adjudicated the right of the parties was rendered in a suit instituted on July 27, 1854, and the lands in Comal County were sold in May, 1852; so as to them there was no litigation between the parties, while the lands in controversy were directly involved in the litigation.

Under those facts, we all agree that any right existing in Enoch Jones to the lands in controversy, at the time suit before referred to was brought, and up to its final termination, was adjudicated, but that adjudication could not affect any right subsequently acquired by him.

We further agree, if the floating of the certificate from the lands in controversy by Jones and the administratrix was lawful, that he acquired by the purchase of lands in Comal County on which the certificate was then placed an interest in the land certificate equal to one-half the acreage he then bought, and that upon relocation of the certificate he would be entitled to this interest in addition to the one-half owned by him at the time the lands in controversy were originally located.

If, however, the floating of the certificate was illegal, I hold, that as between the parties their rights should be determined as though the certificate had never been floated; and I do not understand the majority to hold differently, though it may be contended, that although the floating of the certificate may have been illegal at the time this was done, yet that Enoch Jones acquired the better right to some interest in the certificate by virtue of his purchase of land in Comal County, if subsequently to the floating of the certificate from the land in controversy there was a failure to have the land surveyed and the field notes returned to the General Land Office in accordance with the Act of February 10, 1852. Pasch. Dig., arts. 4562, 4568.

The record leaves it uncertain whether the lands in controversy had been surveyed and the field notes returned to the General Land Office at the time the certificate was floated. That a valid location was made on the land in controversy is a conceded fact in the case; the record speaks of the land as surveyed land, and in the list of property belonging to the estate of John W. Smith, filed by the administratrix in the proceeding in the Probate Court for partition, the land was declared to be patented land.

For the purpose of presenting my views on the legal questions involved, let it be conceded that Enoch Jones and John W. Smith had done nothing prior to the death of the latter to secure the land except to make a valid location, and that between the time of the death of Smith and the floating of the certificate by Jones and the administratrix nothing further had been done.

Then we have a case in which no forfeiture of the rights acquired by location had occurred under any law at the time an attempt was made to

float the certificate; a case in which a forfeiture of right by failure to have a survey and to return the field notes to the General Land Office could not have occurred, under the Act of February 10, 1852, before February 10, 1853, at least one year after the certificate was placed on land in Comal County; and we have further a case in which, had there been failure to comply with the act before referred to, the right of relocation was secured by the act itself.

Thus it is seen that no right to the lands in controversy acquired by location had been lost at the time Jones and Mrs. Lee attempted to float the certificate, even if it be conceded that nothing more had been done than to make a valid location; and as the rights of no third person intervened, the patent subsequently issued to the original grantee of the certificate for the same land under the relocation as was embraced in the original location of the same certificate, no suspicion as to the validity of the original location could arise even in the mind of a seeker for some fact to give validity to the act of Jones and Mrs. Lee in placing the certificate on land in Comal County.

If the certificate was not legally floated, the lands having been at last patented under it, the rights of the parties in the land must necessarily stand as did the right to the certificate.

Smith owned one-half of the certificate and Jones owned the other when they made the location, and such was and is the interest in the land of persons claiming through them respectively, without reference to the judgment held by the District Court and the Court of Civil Appeals to operate as an adjudication of the rights of the parties; for in such case the judgment and right would correspond, in the absence of equities in the land between Mrs. Lee and Jones.

For the purposes of this case, let it be conceded that prior to the Act of August 30, 1865, persons acting in their own right might lawfully float a land certificate located on land subject to appropriation by it, and thereby might abandon a location, and thus reacquire the right to acquire other land by virtue of it; then the question arises whether Enoch Jones and Mrs. Lee, acting together or separately, in personal right or in representative capacity, had legal right to float the certificate, and thus abandon any right the estate of John W. Smith or his heirs had to the land.

The Court of Civil Appeals held that the administratrix had no such power, and in this holding I concur; and further submit, that Enoch Jones and Mrs. Lee had no such power, even though Mrs. Lee, by virtue of her community right, subject to payment of debts of the estate of her deceased husband, may have been the owner of an undivided one-fourth of the land, and Enoch Jones of an undivided one-half.

Smith and Jones owned the land certificate, and in the lifetime of the former located it on the land in controversy, whereby they became tenants in common, each owning an undivided half-interest.

By the act of location, each impliedly contracted with the other that they would merge the certificate in the land in controversy, and thus each acquire an undivided half-interest in the whole.

Having thus acquired a common and equal interest in the land, neither could lawfully have floated the certificate, nor any part of it, and thus have abandoned a part or the whole of the land without the consent of the other. Johns v. Pace, 26 Texas, 270; Smith v. Tucker, 25 Texas, 605; Kirby v. Estill, 75 Texas, 484; Abernathy v. Stone, 81 Texas, 430.

The same reasons which would deny such a right to Jones would deny it to Mrs. Lee, in so far as she might base such a right on her community interest in the land; for as against her as well as Jones the rights of the heirs of Smith, as well as of the creditors of his estate, had attached to the land in controversy.

While it has been held that each owner of a specific part of a land certificate may locate to the extent of his own interest, and is under no obligation to locate so much of a certificate as belongs to another, that rule can have no application where land has been located to the extent of the certificate for both owners; for each then becomes entitled to an undivided equal part of the whole, and one by floating the certificate, or a part of it, can not divest any right acquired by the other, unless by his consent.

In this case the cotenants attempted to divest the right of all others having an interest in the land; and that they could not do this is too clear, unless there be some peculiarity in this case which takes it out of the rules which govern the powers, rights, and duties of tenants in common, or unless Mrs. Lee, as administratrix, had power, in behalf of all persons interested in the estate of her deceased husband, thus to part with title to property belonging to his estate.

That the location of a valid land certificate on land subject to location gives right in the land, is not an open question in this court. Howard v. Perry, 7 Texas, 266; Sherwood v. Fleming, 25 Texas Supp., 428; Wright v. Hawkins, 28 Texas, 452; De Montel v. Speed, 53 Texas, 339; Nolan County v. Bateman, 54 Texas, 163; Abernathy v. Stone, 81 Texas, 434.

Until located, a land certificate is personal property; "but when located, it loses this character. It then attaches to the land, and becomes a chattel real, and can be assigned and transferred by parol no more than the land itself. Instead of being merely property of itself, it is, like a deed, the evidence of title to the land upon which it is located; and although its sale or assignment subsequent to location, if in writing, but not otherwise, may in equity be held to operate as a transfer of the land, it is the land and not the certificate which is the thing sold." Simpson v. Chapman, 45 Texas, 566; Renick v. Dawson, 55 Texas, 107; Porter v. Bur-

nett, 60 Texas, 222; Hearne v. Gillett, 62 Texas, 25; Adams v. Railway, 70 Texas, 275.

Under the law as it was when the transaction in question occurred, a location gave such right as was sufficient to maintain an action of trespass to try title.   Pasch. Dig., art. 5303.

The certificate being merged in land at time of death of John W. Smith, had the administratrix of his estate lawful power to abandon the right thus acquired; to float the certificate, and thus change the character of right given through it from right to realty to right in a mere chattel? Or had she the power to abandon the land selected and appropriated by the intestate, and through the certificate to select and acquire other lands?

An administratrix is but a trustee clothed with very limited powers, to be exercised for the sole purpose of paying the debts of the intestate, and returning so much of the estate as is not required for that purpose and the necessary expenses of administration to those who, under the law, are entitled to it.

She has no power to exchange property belonging to the estate for any other property; and this is just what she attempted to do when she assumed the right to float the certificate from the land in controversy.  Williams v. San Saba, 59 Texas, 444.   If she could legally have done this, the first effect of the transaction would have been to exchange the land for the certificate, and the second to merge the certificate in other land. This she could not do for the want of power; and the power was not conferred by law, simply because it was not a power necessary to enable her to carry out the purposes for which she was clothed with a trust.   The rights of heirs and creditors vested on the death of the intestate, and they could not thus be destroyed.

The proposition that an administrator has power to exchange a tract of land belonging to an estate confided to his care and administration, for some other land, would not be asserted in a court of justice; but the transaction in question, in my opinion, was, in substance, an attempt to do this in a most objectionable manner.

This case well illustrates why no such power was given or ever ought to be conferred on an administrator.

Smith was practically the owner of the land in controversy at the time of his death; there was no obstacle to the acquisition of perfect title; but the administratrix, acting, no doubt, as she thought, for the best interests of the estate, concluded that she would relinquish right to that, and though the certificate by which it was held would acquire the same quantity of land perhaps more valuable; she made the experiment, and placed the certificate on land already appropriated, and thus acquired no land, while if her intention could have been given effect, the estate would have lost the land in controversy.  If this had occurred after the passage of the

Act of August 30, 1856, the certificate also would have been lost. Pasch. Dig., arts. 4574, 4575.

It is useless to discuss the existence of such a power.

The case of Poor v. Boyce, 12 Texas, 440, may be cited as a decision in favor of the existence of such a power, but the facts of that case make the opinion wholly inapplicable to this.

In that case it appeared that Mrs. Poor, after the death of her first husband, McRea, procured, as the representative of the estate, a land certificate for a league of land, and there was some evidence to the effect that this she subsequently located on the tract of land then in controversy, situated in Bowie County, but there was nothing in the office of the surveyor to show either a location or survey.

It was claimed that this occurred in 1838, and after the marriage of Mrs. McRae. The certificate was subsequently located in Bexar County, a survey made and returned to the General Land Office, and the rights of third persons had attached to the land in Bowie County when action was brought by the heirs of McRae and by his widow to recover that land, which had been sold by Mrs. McRae under order of the Probate Court, and one-half of it by herself, acting, as the decision tends to show, in her own right.

This court held, that if the plaintiffs ever had right to the land, this passed by the sales referred to; but declared if right to the land ever existed, this was abandoned by the acquisition of land in Bexar County by virtue of the certificate.

It was said in that case, in reply to the suggestion that the survey in Bowie County vested an interest in the heirs which could not be divested by the act of the administratrix in locating and acquiring land under the certificate in Bexar County, that she " had the same right to raise the location for the purpose of making one elsewhere which she may have deemed more advantageous to herself and the heirs, that she had to apply for and obtain the certificate and make the location in the first instance."

All this may be conceded, for the purposes of this case; but in that the right to the particular land did not vest in the heirs of McRae at his death, for at that time facts only existed which gave right to a certificate, while in this case the right to the land in controversy vested in the ancestor while alive, and on his death descended to his heirs, and creditors of his estate were entitled to enforce their claims against it.

Holding as Mrs. McRae did the certificate in common with her children, it may be that it was her right to acquire land under it; but the power to do that or to abandon a location made by himself would not have authorized her to abandon land acquired by her husband.

The difference between the right of one interested in a land certificate to locate it, and thus bind another having a like interest, and the right of one having an interest as tenant in common to land to abandon a location

without consent of the other cotenant, is recognized in Johns v. Pace, 26 Texas, 272; but I do not wish to be understood to hold that one having only an interest in a land certificate could bind his co-owner by a location of the entire certificate, for the rule seems to the contrary (Farris v. Gilbert, 50 Texas, 366; Glasscock v. Hughes, 55 Texas, 479); and if this be so, would clearly demonstrate the want of power either in the administratrix or Jones in any manner to bind the interest of the heirs of Smith.

If in fact the land in controversy had not been surveyed and the field notes returned to the General Land Office, then a failure to do this, in compliance with the Act of February 10, 1852, must have operated as an abandonment of the land, and it would have been subject to location by some other person; but as no such forfeiture of rights had occurred when the attempt to float the certificate was made, could Enoch Jones acquire any interest in the land by a wrongful act in which he participated ?

The land having been located, the right to have the land attached; and it was the duty of the administratrix to do whatever was necessary to preserve that right and property to the estate, just as much as it would have been to preserve the land had it been patented, or to preserve any other property belonging to the estate; although it might not have been her duty as administratrix to locate the certificate if it had come into her hands unlocated.

The duty to preserve the estate, the nature of the trust she assumed fixed upon her, and it was fixed also by express statute. Pasch. Dig., arts. 1329, 1340.

The relationship between the heirs of John W. Smith and Enoch Jones, resulting from a conceded cotenancy, imposed upon the latter at least an obligation to observe good faith, and to do no act that would destroy their right, if it did not go further, and demand of him affirmative action if this became necessary to preserve the common title.

The right of Smith and Jones to the land accrued at the same time, and by their voluntary act in locating it by virtue of a certificate in which they had equal right; and so arising the right, it ought not to be deemed that their relations would be different from that of persons who become cotenants by descent.

It has been said, that " Tenants in common by descent are placed in a confidential relation to each other, by operation of law, as to the joint property, and the same duties are imposed as if a joint trust were created by contract between them, or the act of a third party. It may be different when they claim title by distinct purchases, even of the same original title. * * * Being then interested with and for each other in the property, each one is prohibited from acquiring rights in it antagonistic to the others. * * * Being associated in interest as tenants in common by descent, an implied obligation exists to sustain the common in-

terest. This reciprocal obligation will be vindicated and enforced in a court of equity as a trust. These relations of trust and confidence bind all to put forth their best exertions, and to embrace every opportunity to protect and secure the common interest, and forbid the assumption of a hostile attitude by either; and therefore the purchase by one of an outstanding title or an encumbrance upon the joint estate, in his own name, will enure to the benefit of all; but they will be compelled to contribute their respective ratios of the consideration actually given." Tisdale v. Tisdale, 2 Sneed, 596.

If, however, no such trust relation on the part of Enoch Jones existed, still, under the settled rules of equity, through the wrongful act to which he was a party he could acquire no interest in the land in controversy which belonged to the estate of John W. Smith at the time attempt was made to float the certificate.

The wrongful dealing with a trustee, if he had acquired the legal title, would have fixed a trust upon it in his hands. The floating of the certificate, as before seen, was wrongful, and in violation of the rights of the heirs of the estate of John W. Smith, as well as of the rights of creditors of his estate; and this was the first and only step by which it can be contended that their right was lost or in any manner abandoned.

The claim of plaintiffs in error is, that Enoch Jones became the owner of the interest or a part of the interest in the land certificate owned by the estate of John W. Smith, which he subsequently relocated on the land in controversy, whereby he acquired a like interest in the land; or in other words, that he bought such interest in the certificate when he bought land on which it was wrongfully placed by himself and Mrs. Lee, and that on its relocation he has an equivalent interest in the land.

This, in principle, in no respect differs from any other case in which a person purchases property from a trustee with notice that the trust is being violated; and the rule is universal, that such a purchaser takes the property charged with the same trust as was it in the hands of the trustee. Wethered v. Boon, 17 Texas, 143; Kennedy v. Baker, 59 Texas, 154; Perry on Trusts, 217, 225; Pome. Eq., secs. 688, 770, 1048.

All the power Mrs. Lee exercised or attempted to exercise throughout the whole transaction was that of a trustee, of whose powers Enoch Jones was fully advised.

It does not appear when the Probate Court ordered the sale of the land in Comal County, which was shown to have been located under the certificate by virtue of which the land in controversy was located, that the latter fact was in any manner made known to the court; and it ought to be presumed, had that fact been made known, that it would not have ordered the sale of the land in Comal County, in so far as it was held by virtue of that certificate, but would have only ordered the sale of such right as the estate held under the grant to the Baron de Bastrop; for we

can not presume that the court would have ordered a sale by which the rights of the heirs of John W. Smith or the creditors of his estate could possibly be divested from the land in controversy otherwise than by an order to sell it; and the order to sell the land in Comal County, with a view to pass title to certificate by which the land in controversy was held and ultimately patented, and a sale under such order, would have operated a fraud on the heirs of John W. Smith as well as upon creditors of his estate, by reason of which no one cognizant of the facts could have acquired right to the certificate.

If when the certificate was removed from the custody in which it should have remained, instead of locating it on the land in Comal County, the administratrix had sold it under order of the Probate Court to one having notice of all the facts, it is too clear that such a person could not thus have acquired any right to the certificate; and this is so simply because the certificate was merged in the land in controversy, and nothing short of a sale of that could have passed title to the certificate.   East v. Dugan, 79 Texas, 330.

Seemingly conscious that the sale of the land in Comal County did not pass title to the land certificate, the parties, throughout all the subsequent litigation in the Probate and District Courts, treated the land in controversy as the common property of Enoch Jones and the estate of John W. Smith.

The parties may have believed, and doubtless did believe, that they were acting for the best interests of all; but good intentions can not divest legal rights through procedure to which the law does not give that effect; and although it might be held that the sale of the Comal land would have passed title to the land certificate to one not having notice of its former location, still such was the relationship of the parties to each other and to the land in controversy, that no such right can be held to have vested in Enoch Jones, who had full notice of and participated in the wrongful act whereby it is claimed that he acquired title to the certificate.

If these conclusions be correct, it necessarily follows that the land belonged to Enoch Jones and the estate of John W. Smith, in equal parts, when the judgment held by the District Court and the Court of Civil Appeals to be an adjudication of the rights of the parties was rendered; and under such circumstances, even if equities in the land growing out of the common ownership and joint action of Mrs. Lee and Enoch Jones possibly may have existed *as between them*, these were all cut off by that judgment.

I think the judgment ought to be affirmed; but as the intervenors are not before the court, what their right may be it is not necessary to consider.

If the holding of the majority on the questions considered be correct, then I concur in the holding that the judgment should be reversed and the cause remanded.

Delivered April 27, 1893.

*H. B. Barnhart* and *W. M. Walton* argued motion for rehearing, for defendants in error.

ON REHEARING.

BROWN, ASSOCIATE JUSTICE.—J. B. Lee and others instituted suit in the District Court of Bexar County, against Charlotte T. Jones et al., to recover an undivided half-interest in a league and labor of land in Frio County, and for partition. The case was tried before the court without a jury, and judgment was entered for the plaintiffs, from which the defendants appealed to the Supreme Court. The cause was by this court transferred to the Court of Civil Appeals for the Third Supreme Judicial District. The Court of Civil Appeals affirmed the judgment of the District Court. Jones et al. applied to this court for a writ of error to the Court of Civil Appeals, which was granted, and upon hearing the judgments of the District Court and the Court of Civil Appeals were reversed and the case remanded. Lee and others filed a motion for rehearing, which is now under consideration.

The facts deemed necessary to an understanding of the questions involved in this motion are as follows: Certificate number 489 was issued to Pedro Flores Morales, and by him transferred to J. W. Smith, in about 1838, who transferred an undivided half of the certificate to Enoch Jones, and thereafter, in the lifetime of Smith, the certificate was by Jones and Smith located on the land in controversy. Smith died in the year 1845, and his widow, having married J. B. Lee, was in 1847 appointed by the Probate Court of Bexar County administratrix of the estate of Smith. Smith left a number of heirs and a considerable indebtedness.

It appears that Smith and Jones were joint owners of a league and labor, perhaps four surveys, in Comal County, granted in the name of Baron de Bastrop, which was in litigation, and in order to secure the land in case of failure of that title, Jones and Mrs. Lee, as administratrix of the estate of Smith, abandoned the location of the Morales certificate, made in the lifetime of Smith, on the land in controversy, floated the Morales certificate, and located it on a league and labor of the Baron de Bastrop land in Comal County. The date of this location and the abandonment of the former location do not appear, but it occurred after the death of Smith, and before the —— day of May, 1852. Mrs. Lee continued as administratrix of the estate until 1856.

In the year 1852 Mrs. Lee, administratrix of Smith's estate, applied to

the Probate Court of Bexar County for an order to sell the land in Comal County on which the Morales certificate was located, which was granted, and the land sold, Jones buying at said sale a part of the land. The sale was confirmed by the court, and Mrs. Lee, as administratrix, made a deed to Jones for the part purchased by him.

In the year 1854 one or more of the heirs of Smith filed an application in the Probate Court of Bexar County for the partition of the estate of Smith. Jones intervened in the suit, setting out certain tracts of land which he claimed to belong to himself and the estate jointly, and asked partition between himself and the estate, not mentioning, however, the land now in controversy. Mrs. Lee, as administratrix, filed an answer, under oath, in which she set out the lands which she claimed to be owned by Jones and the estate of Smith, which embraced the lands in Frio County located by the Morales certificate. The Probate Court found that the land belonged jointly and equally to Jones and the estate of Smith, and ordered that it be partitioned between them, which was done.

In the year 1856 some of the heirs of J. W. Smith filed a suit in the District Court of Bexar County against M. J. Lee, administratrix of the estate of Smith, and the other heirs of Smith, and against Enoch Jones, for a partition of the property belonging in common to the estate of Smith and Jones, and for a partition of the estate of said Smith among the heirs. The petition set up the land in Frio County located by virtue of the Morales certificate number 489, as property of Jones and the estate. Jones filed an answer, consenting that the partition made by the Probate Court of Bexar County be confirmed. Mrs. Lee filed an answer, under oath, setting out the lands which belonged to the estate of Smith and those that belonged to the estate and Jones jointly. The court appointed auditors to ascertain what land belonged to the estate of Smith and Jones, who reported to the court that the lands in Frio County, on the Rio Frio, located under the Pedro Flores Morales certificate number 489, belonged to the said estate and Jones. The court confirmed the partition made by the Probate Court of Bexar County.

In the year 1861 Enoch Jones made affidavit that he was the owner of certificate number 489, and on his application a duplicate thereof was issued to him by the Commissioner of the General Land Office, which he caused to be relocated on the surveys in Frio County upon which it was first located. Patents issued in the name of Pedro Flores Morales. Jones died before the institution of this suit, and plaintiffs in error in this court are his heirs and assigns of such heirs. The defendants in error are the heirs of J. W. Smith and Mrs. Lee, who was his wife at the date of his death.

The principal question to be determined on this motion is, did Mrs. Lee, as administratrix, have authority under the law to abandon the loca-

tion of the Morales certificate made by Jones and Smith? If she had such authority, then the certificate was thereby detached from the land, and when located in Comal County was merged in that land, which last tract being sold to Jones under order of the Probate Court, the right of Smith's estate in the certificate was vested in him in the proportion that the quantity of land purchased bore to the whole. Being the owner of the certificate, the relocation would vest title in Jones to the same extent that he owned the certificate. In this event, the right of Jones in the Frio County land terminated before the proceedings in the Probate Court of Bexar County were had, and before proceedings were commenced in the District Court; hence neither of those judgments could have affected the title afterwards acquired by Jones by relocating the certificate, and the motion for a rehearing ought to be overruled. If, however, Mrs. Lee, as administratrix of the estate of J. W. Smith, had not the authority to abandon the location made by Smith and Jones, and to float the certificate, then the certificate was not detached from the land in Frio County, but remained merged therein, and could not be located upon the land in Comal County at the same time; in which event the sale of the land to Jones did not vest in him the right of the estate of Smith in the certificate. The relocation of the certificate by Jones enured to the benefit of the estate of Smith; and the rehearing should be granted.

Jones being a tenant in common with the estate of Smith, could not abandon the location and float the certificate without the consent of his cotenant. Johns v. Pace, 26 Texas, 272. If the representatives of the tenant in common, Mrs. Lee, the administratrix, had not authority to give consent, it would have the same legal effect as if the consent had not been given.

When the Morales certificate was located by Jones and Smith on the land in Frio County, each became entitled to an undivided half-interest in that land; the certificate became merged into the land; it became real estate. Pasch. Dig., art. 5303; Sherwood v. Fleming, 25 Texas Supp., 408. Upon Smith's death his right descended to and vested in his heirs.

To provide for administration and to define the rights of the administrator, the article quoted (article 1373, Paschal's Digest) further provides: " But upon the issuance of letters testamentary and of administration on any such estate, the executor or administrator shall have the right to the possession of the estate as it existed at the death of the testator or intestate, with the exception aforesaid [the exempted property], and it shall be his duty to recover and hold possession of such estate in trust, to be disposed of under the provisions of this act." Thus the law clearly defined the character in which the administrator was to hold the estate (that is, as trustee), and also defined and limited the power of disposition of such estate to the purposes and methods prescribed by law.

Article 1329 of Paschal's Digest provided for the care of the estate in the hands of an administrator, and enjoined upon him that degree of diligence, that degree of care, that a prudent man would exercise in preserving his own property. But this does not confer such power of disposition as a prudent man would exercise over his own property. It enjoined a duty, but confers no power.

When Mrs. Lee was appointed administratrix of the estate of J. W. Smith she took the estate as it existed; that is, the Morales location was real estate. She took it as a trustee, not as owner. It was her duty to recover and hold possession of it; not to abandon it or to convert it into a different kind of estate. She had the power to dispose of it under the provisions of the law, that is, for the purposes and in the manner prescribed by law, and not according to her own judgment of what was to the interest of the estate. It is pertinent to inquire under what article of the statute or provision of the law she exercised the power to abandon this location made by her intestate, thus, in effect, exchanging land that he had acquired for that which she deemed more valuable.

The law carefully prescribed the purposes for which land might be disposed of by an administratrix, and the method of its disposition. The payment of the debts due from the estate and the expenses of administration could be made by sale of the land, but it must be upon a proper showing, and by authority of the Probate Court; the administratrix could not turn it over to the creditor in payment of his debt, no matter how advantageous such a settlement might be. If the intestate had contracted to convey the land, the administratrix could not comply with the contract without an order of the court, no matter how undisputed the right. If the necessities of the widow and the minor children demanded that provision be made for their support, no matter how urgent the necessity, the administratrix must procure the order of the court before the land could be sold to raise the amount or turned over to them. When the purposes of the administration were accomplished, the administrator could not deliver the estate to the heirs, no matter if there was no contest; he must apply to the court for an order for that purpose. In every instance, the land must be disposed of under the provisions of the law. No discretion was given to the administratrix; she was a trustee with limited powers. We find no law that authorized nor decision that has sanctioned such a disposition of the land of an estate as was attempted in this case.

Poor v. Boyce, 12 Texas, 440, is quoted as authority to sustain the action of Mrs. Lee in abandoning the location made by her intestate, but the inapplicability of that case to the facts of this is so clearly demonstrated in the opinion of Chief Justice Stayton that the argument will not be reproduced.

It is claimed that the evidence does not show that the land was surveyed and the field notes returned to the General Land Office within the

time prescribed by the Act of February 10, 1852, and that the location was forfeited, and that the title of Jones to that land had ceased to exist at the time of the partition in the Probate Court and when the judgment was entered in the District Court, and that the conclusion of the courts, that the matter was res adjudicata, was erroneous. It is undoubtedly true, that if the land was not surveyed and the field notes returned to the Land Office within the time prescribed by that act, the location was forfeited; and Jones claiming title at that time under no other source, these judgments did not affect his after-acquired title, and were not conclusive of his right. In the view taken of the other questions, this becomes immaterial in determining our action upon this motion. Conceding that the land was forfeited as claimed, the effect was that the certificate was by operation of law detached from the land, but the right to the certificate remained in Jones and the estate of Smith, as before. The forfeiture could not have occurred until after Jones purchased the Comal County land, and the subsequent forfeiture of the former location could not have the effect to confer title to the certificate upon Jones. It being the joint property of himself and the estate of Smith, the relocation of the certificate by Jones enured to the benefit of Smith's estate, and the land acquired became the joint property of the estate and Jones.

We conclude that Mrs. Lee, as administratrix of the estate of J. W. Smith, had no authority to abandon the location of the Morales certificate on the land in controversy, and that the certificate remained the joint property of Jones and Smith when relocated, and that the plaintiffs in the court below are entitled to recover one-half of the land, and to have partition of it. It is therefore ordered that a rehearing be granted, and that the judgments of the Court of Civil Appeals and the District Court. be affirmed.

*Affirmed.*

Delivered June 19, 1893.