ELIZABETH HILL *vs.* ARCHIBALD McNICHOL, Administrator.

Washington. Opinion February 27, 1888.

*Deed. Delivery. Instructions. Damages.*

Where a deed, made by A to B is found in B's possession long after its date, the controversy being whether the deed was delivered to B, or was surreptitiously obtained by B without delivery, it was not error for the judge to instruct the jury, that an intention that there shall be a delivery must exist in the minds of both parties, to be evidenced by words or act, or by words and act combined. Nor was it error in such case to instruct that it is not evidence that a deed has been delivered because containing the words, " signed, sealed and delivered," nor because it has been recorded in the public registry.

Nor was it error for the judge to remark to the jury that there was not a scintilla of evidence (meaning actual evidence), that the grantee had the deed before the first time found in her possession, the fact bearing out the statement, the statement being accompanied with the explanation that having the deed at any time in her possession the presumption would be that it was delivered to her at its date.

Nor was it error, upon the question of delivery for the judge to say to the jury that " it is a general rule of law, that where a person sees another conveying property which belongs to himself instead of to the person conveying, and makes no dissent when he should dissent, he is estopped from making a claim;" referring to her act of signing away her dower in her husband's deed of the same property which the disputed deed had apparently conveyed to her.

Where, in such case, the judge peremptorily instructs the jury to return a verdict for a certain sum named, provided they find a delivery of the deed, and they return a verdict for the defendant, thereby finding no delivery and consequently no damages, instructions which effect only the amount of damages become immaterial.

On exceptions, and motion to set aside the verdict.

Assumpsit for money had and received against the administrator of the insolvent estate of Monroe Hill, brought under the statute, upon appeal from the allowance of the claim by the commissioners of insolvency.

The material facts are stated in the opinion.

*S. C. Strout*, for the plaintiff.

The courts uniformly regard this evidence of possession of the deed, with the presumption which it raises of a proper delivery, as *prima facie* sufficient, until overcome by counter proof. *Butrick* v. *Tilton*, 141 Mass. 95 ; *Patterson* v. *Snell*, 67 Maine, 561 ; *Sweetser* v. *Lowell*, 33 Maine, 447 ; *Webster* v. *Calden*, 55 Maine, 171 ; *Blethen* v. *Dwinel*, 34 Maine, 135.

When there is no evidence in the case, as here, of the fact assumed in the instruction, it is misleading, prejudicial, and ought not to be given. *Pierce* v. *Whitney*, 22 Maine, 113 ; *Stephenson* v. *Thayer*, 63 Maine, 147.

There is not in the case a particle of evidence that the deed was delivered upon any condition, trust or understanding of any kind. The deed was absolute upon its face, for a valuable consideration expressed in it. This suit is against the estate of Monroe Hill, the grantor in the deed. It would be inadmissible

for him to prove that the deed was without consideration, and his representatives have no higher privilege; they do not stand in the place of creditors. *Hammond* v. *Woodman*, 41 Maine, 207; *Allison* v. *Kurtz*, 2 Watts, 185; *Wait* v. *Franklin*, 1 Binn. 502; Shep. Touch. 222.

So it is not admissible for the grantor to prove by parol that an absolute deed was in fact subject to a condition, or was delivered as a trust, or that any trust was reserved therein, or in any way to lessen the effect of his deed. This would be contra-- dicting his deed. *Warren* v. *Miller*, 38 Maine, 108; *Jordan* v. *Otis*, 38 Maine, 429; *Brown* v. *Thurston*, 56 Maine, 127; *Osgood* v. *Davis*, 18 Maine, 146; *Bennock* v. *Whipple*, 12 Maine, 346.

If that deed was delivered to her, it was not competent, as we have shown, for Monroe Hill, or his estate, to contradict that deed, or import into it any trusts, conditions or limitations, by parol evidence. *Brown* v. *Thurston*, 56 Maine, 127, and other cases cited.

The court instructed the jury, "A deed may be delivered, although complete and in absolute form, as a trust, or it may be delivered as absolutely to convey title, and as a trust as far as rents and profits are concerned. A man deeds his house to his wife, nothing said about it; there may be an understanding in the minds of the parties that the title is placed there for safety, but the husband goes on and occupies it; the wife is holding it in trust for him." A different doctrine is held in 70 Maine, 92.

No trust in law can be created, unless in writing, except such as arise by implication of law. R. S., c. 73, § 11.

Constructive trusts arise from fraud, as where property has been obtained by fraudulent representation, the property in the hands of the holder is charged with a constructive trust in favor of the defrauded grantor. Perry on Trusts, § 168.

No facts in this case have any tendency to show a trust of either of above classes.

A resulting trust may arise, first, where the purchaser of an estate pays the purchase money and takes the title in the name of a third person; or, second, where a person standing in a

fiduciary relation uses fiduciary funds to purchase property, and takes the title in his own name; or, third, where an estate is conveyed upon trusts which fail; or, fourth, where the legal title to property is conveyed and there is no reason to infer that it was the intention to convey the beneficial interest; or, fifth, where voluntary conveyances are made, or conveyances without consideration. Perry on Trusts, § 125.

The first three instances of resulting trust, above stated, manifestly do not apply here. As to the fourth, where legal title is conveyed, but there is no reason to infer the beneficial interest was intended to be conveyed. We have here a deed expressed to be for a valuable consideration; nothing in the deed suggests a doubt that the beneficial interest was intended to be conveyed. "The trust must result, if at all, at the instant the deed is taken, and the legal title vests in the grantee. No oral agreements, and no payments before or after the title is taken, will create a resulting trust, unless the transaction is such at the moment the title passes that a trust will result from the transaction itself." Perry on Trusts, § § 133, 134–151.

There is no evidence that Abner Hill paid the consideration in the deed, Monroe Hill to plaintiff. Nothing of the kind is claimed or attempted to be proved. Hence there is no basis for a suggestion that the land was charged with a resulting trust in his (Abner's) favor. Even if such payment had been made by Abner, the deed being to his wife, for whom he was bound to provide, it would be presumed and treated as a gift, and the beneficial title would pass and no trust result. Perry on Trusts, § § 143, 144, and cases cited.

It is inadmissible for Monroe Hill, or his representative, to allege a resulting trust to himself, against the expressed terms of his absolute, unlimited warranty deed. *Gerry* v. *Stimson*, 60 Maine, 188; *Hale* v. *Jewell*, 7 Maine, 435; Perry on Trusts, § 162; *Ellis* v. *Higgins*, 32 Maine, 34; *Rogers* v. *McPheters*, 40 Maine, 114.

As to voluntary conveyances, the resulting trust to the grantor is confined to common law conveyances, such as feoffments, grants, fines, etc., which operated without consideration. But

this rule does not apply to modern conveyances by deed of bargain and sale, when a consideration is conclusively presumed, and parol evidence cannot be received to show no consideration in an issue between the parties to the deed, or their privies. Perry on Trusts, § 162; *Philbrook* v. *Delano*, 29 Maine, 410; *Randall* v. *Phillips*, 3 Mason, 288.

Besides, voluntary conveyances to a wife or child, were never within the rule, that a trust resulted to the grantor. It is not perceived why a voluntary grant from a son to his mother should not be governed by the same rule. *Stevens* v. *Stevens*, 70 Maine, 92; Perry on Trusts, § 164.

In the portions of this charge excepted to, the judge, after enumerating various circumstances as tending to show non delivery of deed to plaintiff, and among other things the deed from Abner Hill to Horatio Hill and als., August 23, 1871, in which Mrs. Hill joined in release of dower, and which purported to convey the Tomah lands conveyed to Mrs. Hill by Monroe Hill in 1862, with a large number of other tracts of lands, instructed the jury that " it is a general rule of law that when a person sees another conveying property which belongs to himself instead of to the person conveying, and makes no dissent when he should dissent, he is estopped from making a claim." This instruction was erroneous as applied to this case. It is defective as a legal proposition, because it omits the following elements necessary to raise an estoppel :

1st. It must appear that the party standing by knew the state of his own title, and that the property being conveyed by another was his property. Herman on Estoppel, § § 414, 415.

2nd. It must appear that the purchaser was ignorant of the true state of the title, and could not have ascertained it by consulting the public records. Herman on Estoppel, § § 413, 415, 422, 425; *Wood* v. *Griffin*, 46 N. H. 230; *Matthews* v. *Light*, 32 Maine, 308; *Parker* v. *Barker*, 2 Met. 431.

3rd. It must appear that the purchaser, without fault on his part, was deceived by the silence or acts of the true owner, and that his conduct was influenced by it. Herman on Estoppel, § § 323, 411, 412, 425; *Morton* v. *Hodgdon*, 32 Maine, 127.

4th. An estoppel can only be applied against the owner in favor of the grantee and those claiming under him. It cannot be set up by other parties. Herman on Estoppel, § § 323, 324, 328, 423.

It was also defective in leaving the jury to determine when the owner should dissent, without giving them a rule by which to determine it.

The court instructed the jury : " If Monroe Hill was not the principal, but made these cuttings for his father, then the defendant is not liable ; because, if he acted as an agent in the woods, the property came down in the name of Abner Hill, and as a part of the property of the concern and business of Abner Hill." To this instruction plaintiff objects, that if Mrs. Hill owned the land, and the cuttings were made by Monroe, or by his command, as the evidence shows, such cutting was unauthorized and a trespass, and it is no defence to Monroe, in a suit for the value of the cuttings, to say he acted as agent and some one else received the proceeds. He would be equally liable with his principal. *Bacheler* v. *Pinkham*, 68 Maine, 255 ; *Cram* v. *Thissell*, 35 Maine, 88.

In this case, any claim against Monroe Hill, whether in tort or contract, may be recovered.

*C. B. Rounds and G. M. Hanson* also, for plaintiff.

*Baker, Baker and Cornish, (E. B. Harvey, L. G. Downes* and *George A. Curran* with them) for the defendant, cited : *Brown* v. *Brown*, 66 Maine, 316 ; *McGraw* v. *McGraw*, 79 Maine, 257 ; *Stephenson* v. *Thayer*, 63 Maine, 147 ; *Bradstreet* v. *Bradstreet*, 64 Maine, 204 ; *Harvey* v. *Dodge*, 73 Maine, 316 ; *Goodspeed* v. *Fuller*, 46 Maine, 148 ; *Harmon* v. *Harmon*, 61 Maine, 224 ; *Rerick* v. *Kern*, 2 Am. Lead. Cas. 549 ; S. C. 16 Am. Dec. 501, note ; *Kent* v. *Kent*, 18 Pick. 571 ; *Driscoll* v. *Marshall*, 15 Gray, 62 ; *Hazelton* v. *Putnam*, 3 Chandler, 117, notes ; 54 Am. Dec. 166-7, and cases ; *Wynn* v. *Garland*, 19 Ark. 23 (68 Am. Dec. 196) ; *Lakin* v. *Ames*, 10 Cush. 198 ; *Merrick* v. *Plumley*, 99 Mass. 566 ; *Putney* v. *Day*, 6 N. H. 470 ; *Raritan Water Co.* v. *Veghte*, 21 N. J. Eq. 475

(2 Am. Lead. Cas. 565) ; *Ricker* v. *Kelly*, 10 Am. Dec. 43, notes ; *Drake* v. *Wells*, 11 Allen, 142 ; *Hill* v. *Cutting*, 107 Mass. 596 ; *Wynn* v. *Garland*, 68 Am. Dec. 196.

PETERS, C. J. The primary question of this case is, whether a deed, under which the plaintiff claims important interests, was ever delivered to her. The evidence on the point is scarcely at all contradictory, and strongly supports the verdict of the jury against delivery. A brief statement of the facts, excluding voluminous details which relate only to the question of damages, will render an elucidation of the case easy.

The central historical figure seen in the facts is Abner Hill, who, for more than a half century, resided either in this state or New Brunswick, engaged in the lumbering business on the St. Croix river. His several sons, as they grew up, participated in his business in different relations, without any change of ownership, apparent or proved, and without any contracts for compensation for their services. They continued on after becoming of age in the same manner as while under age. Any son wanting money for his use received it, while all were economical.

Monroe Hill, another important figure in the scenes, was the oldest son, evidently the ablest in business respects, who naturally succeeded to the more difficult tasks of the business, the father and all the sons co-operating. All were employed. Mills, stores and houses were owned by Abner Hill, who had undoubted commercial credit for many years. Monroe, being unmarried, lived at his father's home until he died in October, 1867. The only departure from these relations up to the death of Monroe that can be discovered in the books and papers and other evidence in the case, is that Monroe purchased and owned some real estate in his own name. There is a possibility that he became a partner with his father in some way, but the evidence is extremely meagre which has any tendency to show it.

In 1861, for some cause not disclosed in this case, possibly having connection with the then threatened civil war, in this country, they doing business on the Province side of the river, Abner conveyed to Monroe his interest in a block of valuable stores in Calais, the deed being at once recorded. On June 16,

1862, he conveyed to him certain valuable wild land, and this deed was immediately recorded. It turns up, after Monroe's death, that, on the same day, June 16, 1862, Monroe made a warrantee deed, purporting full consideration, of both the Calais stores and the wild land, to his mother, Elizabeth Hill, the plaintiff, which deed was never seen or heard of, by any person who testified, until within a few days after Monroe died, when it was taken from a drawer in a bureau at the Hill house by the mother, and hurriedly sent by a special messenger to Machias to be recorded. There is every reason to believe that this act of the wife was intended to be kept secret, and that it was not known to the husband up to the time of his death in 1872.

It is by virtue of this deed that the plaintiff's claims are now made. From 1861 until 1872, all the property included in this conveyance remained in Abner Hill's possession and under his management, by himself or through his sons, precisely as if never by him or his son conveyed. His wife had no money to pay for it, and evidently paid nothing for it. It was never in the lifetime of her husband taxed to her, nor insured in her name, nor did she before his death collect any rents or stumpages, or attempt or claim to, nor were any collected on her account or in her name. In no way did she assert, by any word or act disclosed in the case, any claim under the deed of 1862 while either the son or husband was alive. That she had intelligence enough to do so is displayed by many things done by her concerning the property afterwards. In 1866, Monroe sought a partition of the stores between himself and other owners, as if his property. In 1870, her husband deeded to her some of the store property, referring to the partition made. And, as if she had not deeds enough, in 1871 he deeds to his son, George A. Hill, the same property, and on the same day George conveys the same to his mother, making allusion to the same partition, such acts being utterly inconsistent with the idea of her receiving a valid conveyance in 1862. Among other participations in conveyances, she accepts a lease of an interest in the store property, which was already hers if the deed of 1862 was valid.

Then comes a most significant piece of evidence which is fairly

a rebuke to her present claims. In 1871, the father retiring from active business, with his aid and by the use of his property, the living sons undertook to carry on business under the name of Hill Brothers. To furnish them a capital, and to enable them to retrieve some business disasters, Abner Hill made a mortgage with other property, of this same wild land, which was already his wife's by the pretended deed of 1862, and she joins in the conveyance to release her dower therein, the conveyances of 1862 being unsuspected by the grantees in the mortgage. As required by the law of the Province of New Brunswick, where the land is situated, she was examined before a magistrate apart from her husband, as to the free exercise of her own will in affixing her signature, and she refused, after full explanation from the draughtsman, to execute the mortgage until after she had taken the papers home to personally examine and consider them. Though an admissible witness to all facts occurring after the death of Monroe, had she dared the ordeal of cross examination, and thus having an opportunity to explain her acts and omissions, since October 8, 1867, which make so strongly against her present claims, she did not see fit to testify. Even the original deed of 1862 to her was not found, and a copy was used at the trial.

Obtaining a large property through uncontested conveyances from her husband and son, and remaining in undisturbed possession of the same ever after her husband's death in 1872, she allowed Monroe's estate to remain unmolested until 1880, when she procured a friendly administration upon it in the name of her counsel. Being the only creditor, and procuring a representation of insolvency, she asks that the estate be sold to satisfy her demands against it, and sues to recover the following claims : For an amount due under the covenants of warranty in the deed by Monroe to her in 1862, the incumbrance being a mortgage placed upon the property by some owner prior to Monroe, about two thousand dollars ; for services taking care of Monroe in his last sickness, about eight hundred dollars ; for rents collected, between 1862 and 1867, from the Calais stores, about three thousand dollars ; for stumpages taken from the wild land, in

same time, about five thousand dollars.    She claims interest on these sums for twenty years or more.

The property at which her claims are aimed is real estate which her husband and sons, after Monroe's death, sold and conveyed as the heirs of Monroe, receiving full payment therefor, and the real defendants, admitted to the defense of the suit, are the parties who innocently purchased such real estate and fully paid for it.

The case was nonsuited, so far as the bill for nursing was concerned, and although an exception was taken to that ruling, the exception is not pressed.

The defenses set up against the claims for rents and stumpages were, that the deed of 1862, under which the claims are asserted, was never delivered to the plaintiff, or not delivered before the rents and stumpages were taken, or that the rents and stumpages were not taken by Monroe Hill, but by Abner Hill, or on Abner's account and accounted for to him.  It was further contended that, if the deed had been delivered in Monroe's lifetime, it was as a cover against creditors, and in secret trust for Abner Hill's benefit, and that she allowed him to possess and use the property precisely as if it were his own, without liability to her for such use or for any products or proceeds thereof, and that she cannot now recover for such rents and profits as were actually taken and enjoyed under such unretracted or uncancelled permission and understanding.

The charge of the judge has been ploughed over thoroughly, almost paragraph by paragraph, for the discovery of objections, and seems to be complained of by the plaintiff, as argumentative and too impressive in behalf of the defendant, and as here and there expressive of the opinion of the judge upon questions which are of fact and not of law.   The complaints are not well founded.

It would be useless to accompany counsel through so much of his able argument on these points as relates to the rents and stumpages, because those matters appertain only to the amount of damages recoverable, and those questions were never reached by the jury, the finding being that the facts would not justify a

verdict for any damages for the plaintiff. On the claim for damages for covenant broken, the ruling was distinct and positive that there must be a verdict for the plaintiff for two hundred and five dollars, if the deed of 1862 to the plaintiff was ever delivered. If the deed was never delivered the plaintiff made no pretension of recovery, except for the nursing bill, which is now as good as out of the case, but the defendant contended that none of the claims outside of the covenants could be recovered even if there had been a delivery. The jury were required to make several findings as to the different classes of claims, the judge using the following language : "The two hundred and five dollars can be recovered under the covenants, if the plaintiff has satisfied you that the deed of Monroe was ever authoritatively delivered to her. If that deed was delivered to her so as to pass the property to her, so as to make the title hers, (here referring to an earlier instruction to be noticed hereinafter) then the covenants must be made good. If the deed was never delivered to her, never at any time delivered with the assent of Monroe Hill, the grantor, then she cannot recover at all under this branch of the case. So, *to review a little, and in an inverse order, this sum of two hundred and five dollars is recoverable if that deed was delivered, and if not, not.*" The jury, in allowing no damages, and rendering a verdict on all the questions for the defendant, determined that the deed of 1862, under which plaintiff's claims are founded, was never a valid, operative deed, was never delivered. That question was the fulcrum on which the plaintiff's case turned.

The sign of a careful trial, covering a period of nearly two weeks, is seen in the fact that in the reception of a voluminous amount of testimony, but a single instance is found of an exception to evidence, and that upon an issue removed from the case by the verdict, which was the admission of a question on cross-examination to counteract a contrary statement of the same witness on the direct examination.

We think the learned counsel, in his criticisms upon the instructions on the point of delivery, overlooks or fails to appreciate the case as presented by the law and the facts. He claims that the facts were misstated on which the law depends. An

examination of the charge at its close shows that while a colloquy was held by the court with counsel, to correct misunderstandings and omissions, no suggestion was made that any rules of law were insufficiently expressed, or any facts misstated. That any such complaint, now for the first time made, falls far short of justification, a closer examination of the case will show.

"A great question," says the judge, "is whether there was a delivery of the deed. No particular form of proceeding is required to effect a delivery. It may be by acts merely, or, under circumstances, by words merely, or by both combined; usually, it is by both combined; but in all cases an intention that it shall be a delivery must exist in the minds of both parties." It would be impossible to state the general rule more exactly. Certainly, a grantor need not deliver his deed until he has a mind to, nor can it be forced upon the person named as grantee therein without his consent to receive it.

The charge further declared: "It is no evidence that a deed has been delivered because containing the words, signed, sealed and delivered; that is a preparation for delivery, because the words must be written before the deed can be delivered. Nor is it any evidence in this case that the deed was delivered, because it has been recorded; that is not the least legal evidence of delivery." This is correctly stated, and such a statement is reasonably demanded, when a judge deems it proper to counteract an undue influence that arguments of counsel may create in placing great stress upon such matters. Here it was peculiarly fitting, as the facts show. The illustrations which follow the statement of these rules, were not based upon the facts of the case, nor intended to be, but were descriptions laid before the minds of the jury to help them grapple the force of the principle to be by them applied, to enable them to appreciate the difference between mere possession of a thing and having a rightful delivery of it. And this painstaking by the judge was apropos to the facts of the case and in no respect at all overreaching. The battle of the case was fought over the question of intention. There was no question of the existence of the deed, and no doubt that the plaintiff, after Monroe's death, got it from a bureau and

had it recorded. The greater question was whether it had been properly taken or not. The court would have been remiss of duty to have passed silently by the defendant's propositions of law or of fact on this question.

The counsel for the plaintiff thinks there is no evidence in the case upon which a proposition could be submitted to the jury, allowing them to find a delivery at any time later than the date of the deed, failing to notice that such a submission was in fact favorable, in view of the verdict rendered, to the plaintiff, inasmuch as the jury were thereby permitted to find a later if not an earlier delivery, allowing to her two chances upon which to recover instead of one. It was much easier to believe that a delivery was made in 1867 than in 1862, considering the events happening between those dates, but the jury were incredulous of any delivery at any time.

Perhaps the objection most strongly urged, is to a remark of the judge in the charge that " there is not a scintilla of evidence that she ever had the deed in her possession before October, 1867," and this objection is founded in misapprehension. No witness ever saw the deed until after Monroe Hill died in October, 1867. From a bureau drawer in Abner Hill's house, where there is reason to believe, from the evidence, that both Abner and Monroe kept papers and transacted some business, the evidence being silent as to whether Mrs. Hill had any papers or did any business there or not, the deed was taken by Mrs. Hill, as before said, within a few days after Monroe's death, in the presence of a son, who immediately and secretly hurried with it to the registry at Machias. There is no evidence in the case of any previous possession, more than a presumption arising from her possession at that time, and of that presumption the language of the charge gave her the very fullest benefit. The counsel says, the undisputed fact that the deed was taken from the drawer by Mrs. Hill was evidence of some weight that it had been there before. But much more importance and force was ascribed to that fact than even counsel is here claiming. Said the judge, " She relies upon her possession of the deed in October, 1867, and its record ; that fact makes out a *prima facie* case. Having

the deed in 1867, nothing else appearing, it raises a presumption that she had it at its date. The remark objected to as a misstatement of fact is itself followed by the explanatory and qualifying remark, " but that is the date, and the presumption of law that attaches to it and arises from it." In fact the whole of plaintiff's case was that naked and uncorroborated presumption, as far as evidence of title was concerned. The distinction was correctly drawn between actual and presumptive evidence, and no complaint of it was thought of at the time.

Another phrase in the charge is objected to, which is this : " It is a general rule of law that when a person sees another conveying property which belongs to himself instead of to the person conveying, and makes no dissent *when he should dissent,* he is estopped from making a claim." This is argued to be an incorrect principle of estoppel, insufficiently elaborated and applied. The answer is that it was not given as any rule to be applied to these facts, nor was it pretended that any estoppel would apply here. It was correct as a general remark, explaining itself in its connection, embodied in a statement of what circumstances counsel for the defendant relied on as indicating an admission that the deed of 1862 had never been delivered by Monroe Hill to plaintiff; among those acts being her signing off her dower in the deed of her husband when she was the owner herself under the deed of 1862, if that deed was ever delivered. No principle of estoppel was claimed, and all the demands presented in this suit occurred before the transaction spoken of took place. Her conduct in this matter was submitted to the jury only on the question of delivery, there being no other question in the case besides that of the damages. And on that issue the judge, among other things in connection with the remarks complained of, said, " this testimony, of course, the weight of it is for you to say, is of a character which the law regards important, if she knew and understood the matter. If she knew that that deed was conveying the Tomah property when the Tomah property was included in the deed to her, and therefore that her husband could not own it, if she understood that, the law regards her act as a very important act and

important testimony, and so, much must depend on the question whether she understood what she was doing, knew what she was about."

*Exceptions and motion overruled.*

WALTON, DANFORTH, EMERY, FOSTER and HASKELL, JJ., concurred.