### JOHN E. ROLLER v. E. C. RIED ET AL.

#### No. 143.

1. **Application for Writ of Error must Show that Injury Resulted.**

An application for writ of error must point out in what respect there was error in the decision of the Court of Civil Appeals, and must also show that injury resulted thereby to the applicant. See example .... 71

2. **New Parties—New Pleadings—Notice.**

When a new party is made in a case and a liability to such new party is asserted against the original defendant, or a right or claim to property in controversy is alleged by such new party. notice of such changed pleading must be served upon the defendant if he has not made appearance in the case............................................... 76

3. **Judgment Without Service Void—Presumption.**

A judgment entered against a party without service of process as required by law, is void. The presumption of service, in absence of its appearance in the record, is here negatived, because it appears that the judgment was rendered on the same day the answers asserting new rights were filed............................................... 76

4. **Contract for Locative Interest in Certificate.**

One tenant in common in certain land certificates, with approval of another (together owning seven-eighths), made a contract for the location of the certificates, giving one-sixth interest and authorizing the locator to locate his interest separately. Such contract conveyed one-sixth interest in the certificates, and authorized the locator to locate his part in a separate tract. Having done so, he owned such tract in severalty ...................................................... 77

ERROR to Court of Civil Appeals for the Second District, in an appeal from Wichita County.

STAYTON, CHIEF JUSTICE.—The application and accompanying papers show that appellees brought suit to partition four tracts of land, one of which is the subject matter now in controversy, and the petition alleged the respective interests of each person plaintiff and defendant.

T. W. Scott and John E. Roller were made defendants, and the petition alleged that they together owned nine twenty-fourths of the four tracts to be partitioned.

Roller was alleged to be a resident of the State of Virginia, and notice of that suit, with a copy of the petition, was served on him at his residence on September 24, 1887, but he made no appearance.

T. W. Scott answered, alleging, that he was " the owner in simple title and is entitled to the possession of an undivided five-eighths interest in the four several tracts of land described in plaintiffs' petition, and that all allegations of ownership in either of the plaintiffs herein, or in any of his codefendants, inconsistent with his claim here asserted by him are untrue and ought not to be allowed; * * * and he further says, that his said interest is undivided, and he prays that the court proceed to fix the several interests of the parties to this action, and set apart to this defendant his said five-eighths interest, and place him in possession thereof. He further prays the court to adjudge the claims herein set up by the defendants Slayton and Horst as without foundation, and that all titles be divested out of them and all the other parties to this action to the five-eighth interest claimed by this defendant."

Mary Y. Cannon was not a party, either plaintiff or defendant, to the suit as originally brought; but she subsequently made herself a party, and asserted title to one undivided eighth of the land now in controversy; but of her claim Roller had no notice until a final decree was rendered. No notice was given to Roller of the claim asserted by T. W. Scott.

On May 27, 1888, the four tracts of land were partioned among plaintiffs and defendants and Mrs. Cannon, she receiving one-eighth of the tract in controversy. All right of Roller, however, was divested, and it was decreed that he take nothing.

The inference from the application is that the tract in controversy was divided between three of the plaintiffs, one of the defendants, and Mrs. Cannon.

The entire decree seems to have been entered on agreement of parties who appeared.

In December, 1888, that decree was affirmed, and this suit was brought soon afterwards to set it aside.

On hearing it was set aside, and half of the land in controversy was adjudged to applicant, who also recovered judgment against another party to the suit on warranty of title to the other part of the tract, and from that judgment he appealed.

The judgment, however, was affirmed by the Court of Civil Appeals, on the ground that the trial court erred in setting aside the former judgment; but no decision was made by that court on the merits of the claim of title asserted by the respective parties.

While the application shows how applicant in his petition claims to deraign title, there are no conclusions of fact or law presented in reference thereto; nor is a statement made in the application from which it may be

ascertained what facts were proved bearing upon that question; what rulings of the trial court were made and objected to, and presented to the Court of Civil Appeals.

In this state of the application it is impossible to ascertain that any injury resulted from the ruling of the Court of Civil Appeals; and until the contrary is shown in some legal manner, the presumption is that applicant recovered all the land he was entitled to.

We concur in the ruling of the Court of Civil Appeals, that such accident or mistake was not shown as would excuse the want of diligence on part of applicant to defend the suit; and notwithstanding the averments of the petition as to the ownership of the several parties, the entry of judgment on agreement contrary to the averments might not have constituted such fraud as would require the judgment to be set aside.

We are of opinion, however, that the action of the trial court was correct in so far as its action in setting aside the former judgment went; and although the application must be refused on the ground that it does not show that applicant was entitled to more than he received on last trial, still we deem it proper to state the grounds on which the ruling of the trial court in reference to the former judgment is believed to have been correct; for otherwise the overruling of the application for writ of error might, and doubtless would, be understood as an approval of the ruling of the Court of Civil Appeals in that respect.

The pleadings of T. W. Scott in the former suit asserted right in him not made known by the copy of petition served on applicant, and they alleged rights hostile to him; and it may be true that under such circumstances applicant was entitled to notice of that claim, he not appearing, before the court could have power to bind him by an adjudication; and if so, the judgment was properly set aside, without reference to diligence on part of applicant to defend the suit. If, however, it be true that applicant, under the notice given to him, would be bound to take notice of pleadings by any person named in the petition as a defendant, a matter we do not now intend to decide, it is clear that he was entitled to notice of the claim subsequently asserted by Mary Y. Cannon, and that the court had not jurisdiction over him as to her claim without such notice. Morrison v. Walker, 22 Texas, 18; De Walt v. Snow, 25 Texas, 320; Furlow v. Miller, 30 Texas, 28; King v. Goodson, 42 Texas, 152; Stewart v. Anderson, 70 Texas, 598.

The suit being for partition, it was necessary that every defendant not appearing should have notice of her adverse claim, in order to confer on the court jurisdiction to make partition.

If plaintiffs had set up claim other than that asserted in the petition, applicant would have been entitled to notice of that, and of the claim made by Mary Y. Cannon there can be no pretense that he had notice.

If applicant had no interest in the four tracts of land except in the one

now in controversy, then partition of the others might have been permitted to stand as between the parties who took under the former decree, if as to them it worked no injustice; and if through them third persons, on the faith of that decree, had acquired interests in the other tracts, then in so far, for the protection of such persons, it might have been proper to hold the former partition binding, and to have required persons who took under the decree to have adjusted their equities in some manner other than a repartition.

Although there was error in the decision of the Court of Civil Appeals in the matters complained of in the application, the writ of error must be refused because it is not made to appear that applicant was entitled to any relief he did not obtain through the judgment appealed from.

*Application refused.*

Delivered March 12, 1894.

Motion for rehearing upon amended application was granted.

*J. A. Templeton* and *R. Cobb*, for plaintiff in error.—1. The service of the notice which was made on appellant at his home in the State of Virginia was extra-territorial, was invalid as a personal service, was purely constructive in its character, and was equivalent to nothing more than service by publication. Pennoyer v. Neff, 95 U. S., 714; 2 Black on Judg., secs. 837, 905; Freem. on Judg., sec. 564.

2. The answers of T. W. Scott and Mary Y. Cannon, wherein they denied that appellant owned any interest in the lands then in controversy, and wherein they sought to recover all of said land, set up a new cause of action, and changed the proceedings from a suit for partition, as against appellant, to one of trespass to try title; and the judgment thereafter rendered in said cause, without notice thereof to appellant, was unauthorized, and the court had no jurisdiction to render same, but such judgment was fraudulent and was an absolute nullity. Stewart v. Anderson, 70 Texas, 588; Rabb v. Rogers, 67 Texas, 335; Smith v. Woolfolk, 115 U. S., 143; Windsor v. McVeigh, 3 Otto, 274; Pennoyer v. Neff, 95 U. S., 714.

3. One joint owner of a land certificate has a right to locate his interest therein separately from the other joint owners; and he has a right to authorize the locator of such certificate to thus locate the interest granted such locator, provided the locative interest does not exceed the interest of such joint owner; and when thus located the other joint owners of the certificate have no interest in this part of the land. Kirby v. Estill, 78 Texas, 426; Farris v. Gilbert, 50 Texas, 356; Glasscock v. Hughes, 55 Texas, 479; Myers v. Jones, 23 S. W. Rep., 563; Huffman v. Cartwright, 44 Texas, 296.

*Hunter, Stewart & Dunklin,* for defendants in error.—1. The action of the court in setting aside the judgment rendered by the Supreme Court of the State of Texas in cause number 170 was fundamentally erroneous, said judgment having been rendered by a court having jurisdiction over the subject matter of the controversy. John E. Roller being a party thereto for the purposes of that litigation, the judgment was valid and binding to all intents and purposes, and the interlocutory order setting aside or attempting to set aside said judgment was wrong. Hamblin v. Knight, 81 Texas, 351; Talliaferro v. Butler, 77 Texas, 578; Freeman v. Allen, 119 U. S., 185; Arndt v. Gregg, 134 U. S., 316.

2. The plaintiff in error, John E. Roller, knew of the pendency of the suit against him from 29th day of September, 1887, nearly two years before he filed his petition in this case; and he knew of the rendition of the judgment in said case against him shortly after the same was rendered in May, 1888, and knew that T. W. Scott had controverted his right to any portion of said land and had obtained a judgment therefor in his own interest, and he took no steps to have his interest protected in said property until said 2nd day of June, 1889. He was therefore guilty of such gross negligence and laches in the premises as to entitle him to no relief whatever as against these defendants in error or other parties to said suit. Johnson v. Templeton, 60 Texas, 238; Nevins v. McKee, 61 Texas, 412; Harn v. Phelps, 65 Texas, 592; Overton v. Blum, 50 Texas, 417; Plummer v. Power, 29 Texas, 7.

3. The contract with Cloud for location of the certificates did not bind the heirs of Mrs. Scott. Scoby v. Sweatt, 28 Texas, 731; Burleson v. Burleson, 28 Texas, 416; City of Laredo v. McDonnell, 52 Texas, 511; Johnson v. Bryan, 62 Texas, 623; McDow v. Rabb, 56 Texas, 154; Boggs v. Murced, 14 Cal., 367; Taylor v. Zepp, 14 Mo., 482; Story Eq. Jur., sec. 386.

BROWN, ASSOCIATE JUSTICE.—Robert J. Scott, one of Fannin's men, was killed at Goliad, March 27, 1836, leaving surviving him as his only heirs his father, John Scott, and his mother, Sarah Scott, the latter of whom died February 9, 1842, intestate, leaving her husband, John Scott, and two sons, Thomas W. Scott and Joshua P. Scott, a daughter, E. S. Singleton, and a granddaughter, Mary Y. Cannon, her only heirs.

John Scott died June 5, 1865, leaving a will, with a codicil the effect of which is to devise to Thomas W. Scott one-half the land in Texas, and the other half to Mrs. Singleton, Mary Y. Cannon, and to John Singleton as trustee for Robert L. Singleton. Joshua Scott seems to have died prior to the death of his father, and his sons, Thomas, Jr., Samuel R., and John Scott, Jr., were not given any of the land.

All of the parties were nonresidents of this State except Thomas W. Scott, who resided in the State, and in 1855 procured to be issued to the

heirs of Robert J. Scott two certificates, one for 1920 acres and the other for 1476 acres, and had in his possession these certificates and another, issued to the same parties in the same right, for 640 acres.

Thomas W. Scott and William Cloud entered into the following agreement in writing:

" Be it known, that I, T. W. Scott, of the county of Anderson and State of Texas, and William Cloud, of the county of Gann and State aforesaid [there is no such county], have this day made and entered into an agreement, the provisions of which are as follows: The said T. W. Scott delivers to the said William Cloud for survey and patent two land certificates, to-wit, bounty land certificate 2012, for 1920 acres, issued to Robert J. Scott's heirs by J. S. Gillett, Adjutant General, number 194, for 1476 acres of land, issued to the heirs of Robert J. Scott by Jas. S. Gillett, Adjutant General; and in consideration of the location, survey, and patenting of said certificates by said Cloud or his agents, the said T. W. Scott hereby agrees and promises to transfer, alienate, and convey unto the said William Cloud or to his legal representatives the one-sixth part of the land so located, which sixth part may be located and described separately and distinct from the other five-sixth; and further, the said William Cloud promises and agrees to obtain as good locations as can be found in Young Land District, pay all expenses attendant upon the location of said claims, except the expenses of having the said certificate approved by the Commissioner of Claims.

" Witness my hand and seal, this 25th May, 1858.  Signed in duplicate.

" THOS. W. SCOTT,    [L.S.]
" WM. CLOUD."        [L.S.]

John Scott, the father, knew of and approved the foregoing contract, but the other parties interested did not know of it.    Acting under the contract, Cloud located the two certificates in three surveys.    The 1920 acres certificate was located in Baylor County, and the other was located in Wichita County, in two surveys, one of 907 acres and the other 569 acres.    The latter was located by Cloud for himself as his locative interest, being the land in controversy in this suit.

The lands were patented upon the surveys made by Cloud, and the heirs have partitioned all the lands among themselves in a former suit. Before the patents issued, Cloud conveyed the land in controversy to J. H. Swindells, March 10, 1860, who by deed of gift conveyed it to his daughter, Mary E. Taylor, March 6, 1882, and she, joined by her husband, conveyed the north half of it to Peyton Parks, March 3, 1883; he conveyed this half to John E. Roller, March 5, 1884, and on the same day Mrs. Taylor and husband conveyed the other half to Roller.    All the deeds were duly recorded in Wichita County before March 13, 1884. Soon after his purchase, in that year, Roller went into actual possession

of the land, by a tenant, and has remained in possession ever since, using and enjoying it, and paying all taxes except for the year 1885.

It appears that R. E. Huff bought the interest of Thomas W. Scott, Jr., Samuel R. Scott, and John Scott, Jr., and of two children of Mary Y. Cannon, but nothing in the facts found by either the District Court or the Court of Civil Appeals shows when he purchased. No claim is made that he is an innocent purchaser, so far as we see.

September 17, 1887, E. S. Singleton, R. L. Singleton, Mrs. Sallie Carr and her husband, J. D. Carr, and R. E. Huff filed a petition in the District Court of Wichita County against Thomas W. Scott, A. F. Scott, August Harst, John Singleton, E. F. Ikard, W. D. Slaton, and John E. Roller for partition of the three tracts of land before described and a tract in Young County containing 640 acres, granted to the same parties by the same right, which, however, was not included in the contract between Cloud and Thomas W. Scott. In that petition the claims and interests of all the plaintiffs and defendants were set up, and in substance it was alleged that "T. W. Scott and his assignee, John E. Roller, were jointly entitled to nine-twenty-fourths of the land." Roller was then and ever since has been a citizen of Virginia, and he was so alleged to be in the petition. He was served with notice and copy of the petition under the statute, but had no other notice. He never appeared in that case.

The case was continued at the first term of the court, and at the next term, on the 3rd day of May, 1888, T. W. Scott filed an answer in the case, in which he claimed for himself, against all plaintiffs and defendants, five-eighths of the land, denying all allegations of adverse claims of plaintiffs and defendants, and praying that the land be adjudged to and title vested in him.

On the same day Mary Y. Cannon filed an answer, making herself a party to the suit (she was not a party before that time); claiming a one-eighth interest in the tract now in controversy, and praying for a decree for partition, and vesting title in her for that proportion of the tract. Roller was never served with or had notice of the answer of T. Scott or Mary Y. Cannon.

On the day that the answers were filed the case was tried by the court, and judgment rendered giving the land in controversy in this case to E. S. Singleton, R. L. Singleton, Mrs. Sallie Carr, J. D. Carr, R. E. Huff, A. F. Scott, T. W. Scott, and Mary Y. Cannon, adjudging that all title be divested out of the other parties and vested in them, and that Roller take nothing.

Slaton appealed from that judgment, and on the 3rd day of December, 1888, it was affirmed by the Supreme Court as to the 569 acres tract and reversed as to the other. Slaton was not interested in the tract for 569

acres, and the correctness of the judgment as to that was not before the court.

May 27, 1889, E. S. Singleton, R. L. Singleton, Sallie Carr, J. D. Carr, R. E. Huff, A. F. Scott, T. W. Scott, and Mary Y. Cannon obtained a writ of possession on said judgment, and plaintiff Roller filed this suit to set aside the judgment and to enjoin the execution of the writ of possession. The writ of injunction was granted, and upon trial the District Court set aside the former judgment and gave judgment for Roller for half the land, from which he appealed; the judgment was affirmed by the Court of Civil Appeals of the Second District.

The first question that arises is, was the judgment rendered in the former suit binding upon plaintiff John E. Roller?

As between Roller and the plaintiffs, as well as the parties to this suit, the cause of E. S. Singleton et al. v. W. D. Slaton et al. was a suit for partition, and the petition, in strict compliance with article 3466, Revised Statutes, set out the interest of each plaintiff and defendant. Roller was served with a copy of this petition, and had notice that his rights were therein recognized.

The answer of T. W. Scott, as before stated, denied the interest alleged to be in him and Roller jointly, and claimed the entire interest for himself, praying for decree of title therefor against plaintiffs and all defendants. This was in effect a plea or cross-bill over against Roller, of which he had no notice.

Mary Y. Cannon not being a party to the suit as first instituted, the pleading by which she made herself a party, setting up a claim to the very tract of land which Roller claimed and of which he was in possession, had the same effect as an intervention, of which he was entitled to notice to give the court jurisdiction.

When a new party is made in a case, by which a liability to such new party is asserted against the defendant, or a right or claim to property in controversy adverse to the right of such defendant is alleged by such new party, notice of such changed pleading must be served upon the defendant if he has not made appearance in the case. Bryan v. Lund, 25 Texas, 98. Likewise, if one of several defendants pleaded over against a co-defendant, asserting against him rights in the subject of litigation not mentioned in the petition, notice must be served upon the defendant thus pleaded against, unless he has answered in the main case. Crain v. Wright, 60 Texas, 515; Simon v. Day, 84 Texas, 520; Railway v. Hathaway, 75 Texas, 557.

A judgment entered against a party without service of process as required by law is void. 1 Black on Judg., sec. 220; Hulme v. Janes, 6 Texas, 242; Witt v. Kaufman, 25 Texas Supp., 384. The presumption of service can not be indulged in this case, as it would be if the record did not show a want of it, because the record shows that judgment was

entered on the same day that the answers were filed.   Service could not have been had.   Roller did not appear, and the judgment entered against him was a nullity, and could be attacked collaterally at any time.   The question of diligence does not arise in the case.

There can be no doubt from the evidence that at the time the contract was made between T. W. Scott and Cloud, the former had an interest in the certificates delivered to Cloud of one-eighth, and that John Scott had at that time one-half in interest in said certificates.   It is not denied that John Scott knew of and ratified the contract so made.   It will therefore be considered as the contract of John Scott, the same as if he had signed it.

In consideration of the location, survey, and patenting of the lands under the two certificates, the contract bound T. W. Scott and John Scott (the former by its terms and the latter by his ratification) to make to Cloud a deed to one-sixth part of the land to be located by virtue of these certificates, which he was authorized to locate for himself separately.   The effect of this contract was to transfer to Cloud an undivided one-sixth of the certificate itself.   Wilson v. Simpson, 68 Texas, 306.

In the case cited, Payne gave to Harris a bond binding himself to convey to Harris two-thirds of the remaining part of his headright.   The bond proceeded upon the idea that the land was then located, when in fact no certificate had been issued, but it subsequently issued to Payne. This court said:   "This gave Harris an undivided two-thirds interest in the certificate.   * * *   Harris' heirs had the right to locate their part of the certificate separately, and to hold the location as their interest in severalty."   If the bond to convey land which had not been located transferred an interest in the certificate issued on account of the right by which the land was supposed to be held, but which certificate was not then issued, certainly a bond to convey the one-sixth interest in land to be located by certain certificates then delivered for location would have the same effect.

One who owns a certificate may transfer a part of it, and his assignee will have the right to locate his part for himself, and will not be a tenant in common with the owners of the land located by virtue of the balance of the certificate.   Glasscock v. Hughes, 55 Texas, 479; Farris v. Gilbert, 50 Texas, 356; Parker v. Spencer, 61 Texas, 165.

Cloud located the land for himself under the contract, sold it by metes and bounds, and Roller, claiming under him, was in the exclusive possession of it for years before the suit and at the time the judgment was rendered.   The case is a stronger one for the separate claim here than in the cases cited, for in this case it was a part of the contract of transfer that he should have the right to separate his interest at the time of the location.

The contract with Cloud did not bind the other heirs in so far as they claimed under their mother, but as to their claim under John Scott they were bound the same as T. W. Scott was bound by the contract.   If in

making a partition among themselves they or any of them have not been fully protected, it is no fault of Roller, and he certainly can not be made to suffer for their errors in partitioning the estate to which they were jointly entitled.

The District Court erred in not entering judgment in favor of Roller against the defendants for all of the 569 acres tract, and the judgments of the District Court and the Court of Civil Appeals are reversed and judgment rendered in this court in favor of John E. Roller against all the defendants; that the enforcement of the judgment entered in the case of E. S. Singleton and others v. W. D. Slaton et al. be perpetually enjoined as to the 569 acres tract, and that said judgment, in so far as it affects the last named tract of land, be declared null and void and held for naught; and that the cloud cast upon the title of John E. Roller by the rendering of said judgment be removed. It is also ordered, that plaintiff in error recover from defendants in error all costs in this case. That this judgment be certified to the District Court of Wichita County for observance.

*Reversed and rendered.*

Delivered May 31, 1894.