**HOWTH et al. v. TALIAFERRO. (No. 1397.)\***

(Court of Civil Appeals of Texas. Beaumont. Nov. 29, 1926. Rehearing Denied Dec. 8, 1926.)

1. **Deeds ⬅66—Issue of delivery of deed held raised by evidence and properly submitted to jury.**

Evidence that deed was found with unfiled papers from county clerk's office and delivered to heir of grantee *held* to raise issue of delivery so that it was properly submitted to jury.

2. **Evidence ⬅83(4)—County clerk is presumed to file and record deeds left with him for recording or delivery.**

Presumption is that county clerk performs duty and files and records deed left with him for recording or delivery.

3. **Deeds ⬅208(5)—Finding that deed found among unrecorded papers from county clerk's office was never delivered held sustained by evidence.**

Evidence *held* to sustain finding that deed found among unrecorded papers from county clerk's office and given to grantee's heir by third party was never delivered.

4. **Deeds ⬅194(1)—No presumption of intent to pass title is raised by delivery of deed to third person.**

Delivery of deed to third person does not raise presumption that it was done with intent to pass title, but this is matter of proof.

5. **Deeds ⬅194(5)—No presumption of delivery was raised by recording of deed delivered to heir of grantee without authority long after death of parties.**

Recording by heir of grantee of deed delivered to him by one without authority 48 years after its execution, and when all parties were long since dead, raised no presumption of delivery.

6. **Trespass to try title ⬅16—Delivery of deed without which appellants would be trespassers may be raised by owner of interest bringing trespass to try title.**

One owning undisputed interest in land and bringing trespass to try title is in position to raise question of delivery of deed, absence of which would make opposing parties mere trespassers against whom he would be entitled to possession.

7. **Public lands ⬅178(1)—Instrument conveying land surveyed and proportionable interest in certificate held not to entitle grantee, on failure of survey, to land surveyed under remaining portion of certificate.**

Where instrument conveyed interest in 392 acres surveyed on certificate of land commissioners, and proportionable interest in certificate and survey proved void, grantee *held* not entitled to 262 acres surveyed under remaining portion of certificate, since instrument did not convey undivided interest.

8. **Public lands ⬅178(1)—On failure of survey under land certificate, grantee of survey and proportionable interest in certificate was entitled to relocation.**

One purchasing lands surveyed under land certificate and proportionable interest in certificate, on survey proving void, was entitled to relocation which inures to his benefit, even if patent issues in name of original holder of certificate.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Suit for partition by R. W. Howth and others against W. F. Taliaferro. Defendant filed cross-action in trespass to try title. The heirs of Jesse Ashworth intervened alleging ownership as in trespass to try title, and sought to recover the land against both plaintiffs and defendant. Judgment for defendant, and plaintiff and interveners appeal. Affirmed.

J. A. Harrison, D. E. O'Fiel, and Howth, Adams & Hart, all of Beaumont, for appellants.

W. G. Reeves and S. M. King, both of Beaumont, for appellee.

O'QUINN, J. Appellants were plaintiffs below. They brought this suit against appellee, Taliaferro, for partition of the McGuire Chesson 262-acre tract of land in Orange county, Tex. Appellee answered by a general demurrer, general denial, and denied

that plaintiffs had any interest in the land, and alleged that he was the owner of the land in fee simple, and by way of cross-action sued plaintiffs in trespass to try title to said land, and also pleads limitation under the five and ten years' statutes.

The heirs of Jesse Ashworth intervened, making the usual allegations of ownership as in trespass to try title, and sought to recover the land against both plaintiffs and defendant.

Plaintiffs abandoned their partition suit, and in replication to the cross-action filed answer of general demurrer, general denial, and plea of not guilty.

The land involved is 262 acres, known as the McGuire Chesson survey, in Orange county, Tex. It was located and surveyed for McGuire Chesson on July 28, 1842, by virtue of headright certificate No. 24, granted to McGuire Chesson August 2, 1841, for 640 acres of land, and patented to McGuire Chesson February 24, 1863.

McGuire Chesson died on 1860, and his wife, Eliza Chesson, died in 1866, both intestate, leaving five children, to wit, James, Jeff, Caroline, who married H. L. Gray, Sr., Celestine, who married Frances Le Blue, and Sarah, who married Joseph Jirou.

In August, 1871, Sarah Jirou, joined by her husband, conveyed her interest in the land to Caroline Gray. Caroline Gray died in October, 1871, leaving only one heir, Hugh E. Gray, who died in 1920. On March 16, 1894, Hugh E. Gray conveyed to Clara Landry all the interest in the land in controversy which he inherited from his mother, Caroline Gray. This interest passed by regular chain of title and vested in appellee, W. F. Taliaferro. Appellee maintains that he acquired the entire interest of the Chesson heirs in the land under the deed from Hugh E. Gray by virtue of the land in controversy having been allotted to Caroline Gray, mother of Hugh E. Gray, in the division and distribution of the McGuire Chesson estate, and in addition to his record title, asserted title by limitation.

In 1870 Celestine Le Blue, joined by her husband, conveyed to James Chesson her one-fifth interest in the land in question. Appellants offered in evidence a deed purporting to have been executed on April 1, 1873, by James Chesson and Jeff Chesson to H. L. Gray, Sr., conveying all their right, title, interest, and claim in and to the 262 acres, naming their said interest as being three-fifths thereof. It is contended by appellee that this deed was never delivered.

After the death of his wife, Caroline Gray, H. L. Gray, Sr., in 1879, married again. He died intestate in 1903, leaving three children by his second wife, H. L. Gray, Jr., Nellie Gray Allen, and Sam Gray, who never married and died without issue in 1915. H. L. Gray, Sr.'s second wife died prior to his decease. H. L. Gray, Jr., acquired whatever in-

terest his sister, Nellie Gray Allen, inherited from her father, and conveyed all such interest as was owned by him to appellants. It is upon this conveyance that they base their claim to a portion of the land.

The case was tried to a jury upon two special issues. The jury, in answer to said issues, found: (1) That the deed from James and Jeff Chesson to H. L. Gray, Sr., was never delivered; (2) that appellee had title under the ten-year statute of limitation. On this verdict, judgment was rendered for appellee. The plaintiffs and interveners both filed motions for a new trial, which were overruled. Both have appealed.

[1] Appellants' first six propositions relate to the issue of the delivery of the deed from James and Jeff Chesson to H. L. Gray, Sr., and will be considered together. The contention that said issue should not have been submitted to the jury because not raised by the evidence is overruled. The issue was distinctly raised. The further contention that the verdict of the jury that the deed had never been delivered is not supported by the evidence is also overruled.

Briefly stated, the evidence shows that the deed bears date April 1, 1873, acknowledged by James Chesson on April 2, 1873, before W. F. Gilbert, clerk of the county and district courts of Jefferson county, Tex. It does not show to have been acknowledged by Jeff Chesson. Some time prior to 1901 (it does not appear when) this deed was in a bundle of miscellaneous papers in an old barrel in the office of the county clerk of Jefferson county, some of which papers had been recorded and some had not (this deed not having been recorded), and remained there with said papers until some time about the year 1902 or 1903, when in some manner not shown this bundle of miscellaneous papers was carried to the law office of Captain George W. O'Brien and his son, Judge George C. O'Brien, where it remained until December 28, 1921, when Judge George C. O'Brien told H. L. Gray, Jr., of the existence of the deed and delivered it to him, and he filed same for record. So far as the record discloses, this deed was never in the possession of H. L. Gray, Sr., who died in 1903, nor was the land inventoried as a part of the estate of H. L. Gray, Sr., by H. L. Gray, Jr., administrator of his father's estate. Nor does it appear that the land was ever rendered for taxes or any taxes paid thereon by H. L. Gray, Sr., during his lifetime or by his administrator, or any one claiming under the deed in question. James Chesson died in 1881, and Jeff Chesson died in 1897. At the time the deed was delivered to H. L. Gray, Jr., and filed for record, the grantors and the grantee in said deed were all dead, and had been for many years. Judge George C. O'Brien, who delivered the deed to H. L. Gray, Jr., was the attorney for H. L. Gray,

Jr., in the administration of the estate of H. L. Gray, Sr.

[2-5] We have stated only a portion of the evidence bearing on the issue of delivery of the deed, but sufficient to show that issue to have been raised. The deed was not delivered within the lifetime of either the grantors or the grantee. Its existence seems to have been entirely forgotten, although the grantee lived for many years after the date of its execution and died in the vicinity of where all the parties lived. No inquiry for it or claim made under it is shown. The final delivery of the deed to an heir of the grantor was 48 years after the deed was executed, by one who was in no way a party to the deed and not shown to have any authority to deliver same to any party. The deed for many years remained in the office of the county clerk, who had prepared same and had taken the acknowledgment of one of the grantors, and was never filed for record or recorded, when the presumption is if the deed had been left with him for record or delivery he would have performed his official duty and filed and recorded same. Its being among miscellaneous papers for so long a time uncalled for and forgotten. It having been acknowledged by only one of the grantors. The lack of claim by the grantee and the fact that his son, administrator of his estate, did not inventory the land as an asset of the estate of deceased, and the fact that the deed recited as a part of the consideration for its execution a vendor's lien note for the sum of $100, and there being no evidence showing any such note was ever in the possession of either of the grantors, or that said note was ever paid or released or seen among the papers of H. L. Gray, Sr.. we think amply supports the finding of the jury that the deed was never delivered. McLaughlin v. McManigle, 63 Tex. 553; Steffian v. National Bank, 69 Tex. 513, 6 S. W. 823; Cox v. Payne, 107 Tex. 115, 174 S. W. 817; Selby v. Smith, 301 Ill. 554, 134 N. E. 109. Furthermore, the delivery of a deed to a third person does not authorize the presumption that it is done with the intent of passing title. The facts and circumstances attending the transaction must be such as to show that the grantor intended that the deed should be delivered by the custodian to the grantee; the delivery to a third person raises no such presumption as that such delivery is for the use of the grantee, and it is incumbent on those claiming under the deed to make proof of the fact. Trask v. Trask, 90 Iowa, 318, 57 N. W. 841, 48 Am. St. Rep. 446; Thomas v. Sullivan, 138 Mich. 265, 101 N. W. 528; Johnson v. Fulk, 282 Ill. 328, 118 N. E. 706; Devlin on Deeds (3d Ed.) 467. There can be no presumption that the deed was legally delivered arising out of the fact that H. L. Gray, Jr., placed same of record. It is undisputed that H. L. Gray, Jr., came into possession of the deed from one who had no authority to deliver same; that it was 48 years after the execution of the deed, and when all parties to it, grantors and grantee, had long been dead. Mortgage Co. v. Brown, 105 Ga. 475, 30 S. E. 687; Hill v. McNichol, 80 Me. 209, 13 A. 883; Ten Eyck v. Whitbeck, 156 N. Y. 352, 50 N. E. 963.

[6] Appellants' contention that appellee was not in position to raise the question as to the delivery of the deed from the Chessons to H. L. Gray, Sr., is overruled. Appellee claims the entire survey in controversy by virtue of a deed from Hugh E. Gray, son of Caroline Chesson Gray, who inherited from his mother, to whom, according to the testimony of Chas. J. Chesson, son of Jeff Chesson, the entire survey had been allotted in the division of the McGuire Chesson estate. If it should be said that Hugh E. Gray did not own the entire survey, still it is undisputed that he did own an interest therein, and such interest as he did own had passed regularly into and vested in appellee, who would be entitled to recover the entire survey as against a naked trespasser, which appellants are if the deed in controversy was never delivered. Padgett v. Guilmartin, 106 Tex. 551, 172 S. W. 1101.

Appellants' seventh, eighth, ninth, and tenth propositions assert that the court erred in submitting the issue of ten-year limitation to the jury, insisting that the evidence did not raise the issue, and assailed the finding of the jury in favor of limitation, contending that said finding is not supported by the evidence. The propositions are overruled. The evidence not only raised the issue, but amply supports the finding of the jury. This entitled appellee to a judgment against appellants, regardless of the finding on the question of delivery of the deed above discussed. These holdings determine the appeal as to the appellants.

[7] We will now discuss the contentions of the appellants interveners. The record discloses that conditional certificate No. 24 for 640 acres of land was issued to McGuire Chesson on April 4, 1839, by the board of land commissioners of Jefferson county, Tex., and on August 2, 1841, upon his proving that he had resided in the republic three years and performed the duties required of him as a citizen, he was given unconditional certificate No. 24 for 640 acres of land. On June 25, 1841, O. H. Delano, county surveyor of Jefferson county, surveyed for McGuire Chesson 392 acres located in Jefferson county, same being a part of the 640 acres to which he was entitled by virtue of said certificate No. 24. We do not deem it necessary to set out the field notes of this 392-acre survey, but state that on the face of the return of the survey and immediately following the field notes, the surveyor says:

"The above survey is on a survey of 1/4 league surveyed and titled to 1835 to Frederic Bigner."

This survey was accepted and acknowledged by McGuire Chesson January 11, 1842, as follows:

"This is to certify that O. H: Delano, surveyor for Jefferson county, has surveyed for me 392 acres of land situated south of a survey made for Thos. Spear, it being a part of the land to which I am entitled by virtue of a certificate No. 24, second class, issued by the board of land commissioners of Jefferson county, for 640 acres of land.

"Given under my hand this 11th day of January, 1842.

his

"McGuire X Chesson.

mark

· "Witness: Joseph W. Taylor."

On July 28, 1842, Wm. Armstrong, surveyor for Jefferson county, Tex., surveyed for McGuire Chesson a tract of 262 acres, located on the east bank of the Neches river about 2½ miles northeast from the town of Beaumont, as the balance he was entitled to by virtue of said certificate No. 24 for 640 acres. This land was then in Jefferson county, but when Orange county was created fell within and is situate in said county. Patent was issued to this land to McGuire Chesson on February 24, 1863. This is the land in controversy.

The interveners' claim to the land is based upon the following instrument:

"State of Texas, County of Jefferson:

"Know all men by these presents that I, McGuire Chesson, in consideration of one hundred twenty dollars to me paid by Jesse Ashworth, do hereby bargain, sell and convey unto the said Jesse Ashworth and his heirs forever, all my right, title, interest and property of, to and in a surveyed tract of land of three hundred and ninety-two acres lying in said county surveyed by O. H. Delano for me on a certificate issued to me by the board of land commissioners of said county second class No. 24 for six hundred and forty acres, together with that proportion of title in said certificate.

"To have and to hold said land and proportionable interest in said certificate to the said Jesse Ashworth and his heirs forever with the interest I have in said land and certificate.

"May 29, 1846. My scrawl by way of seal.

his

"McGuire X Chesson."

mark

The location of the 392-acre tract conveyed to Jesse Ashworth by the above instrument, as shown by the surveyor's statement at the bottom of his return of the field notes when he made the survey, was in conflict with a prior titled survey, the Frederic Bigner, and was later lifted and relocated. A certificate No. 15/197 for the balance of the 640-acre certificate (over and above the 262 acres) was issued to McGuire Chesson on February 10, 1863, by the land commissioner, and this was located in Jack Young county November 24,

1874, and was patented to McGuire Chesson October 22, 1875, by whom the certificate No. 15/197 for the relocation of the land covered by the 392-acre survey was obtained and located is not shown. Although the patent to this relocated land in Jack Young county was issued in the name of McGuire Chesson, the record does not disclose who received the patent or took possession of the land, or who then or now claimed it.

Interveners contend that as the 392-acre survey had proven void, they, upon the floating of that portion of the certificate by virtue of which it was surveyed, became and were entitled to the 262 acres that had been located and patented under the remaining portion of the certificate of the McGuire Chesson, or at least to a 392/640 thereof.

This contention cannot be sustained. Their ancestor, Jesse Ashworth, purchased a tract of 392 acres of land, which had already been located and surveyed, together with a 392-acre proportion of the 640-acre certificate by virtue of which it was surveyed. He was "to have and to hold said land and proportionable interest in said certificate"—not an undivided interest of 392 acres in the entire certificate when located. That portion of the certificate used in locating the 392 acres conveyed to Ashworth was merged in the land when the survey for the 292 acres was made. The remainder of the 640-acre headright certificate was merged in the 262-acre tract when surveyed in Orange county. The deed to Ashworth was made four years after the 262-acre tract had been surveyed, and there is nothing in Ashworth's deed to support the presumption that Chesson intended to convey to Ashworth anything or any interest other than the 392-acre tract surveyed by Delano for him and that proportionate part of the certificate merged in that particular tract. In the language of counsel for appellee:

"The effect of the deed, and what it was the purpose and intention of Chesson to convey must be determined from the four corners of the deed, for it is unambiguous and exceptionally specific and definite in its terms. If McGuire Chesson, by this deed to Ashworth, had intended to have conveyed any part of the survey made for him by Armstrong and now located in Orange county, we believe he would not have restricted his deed to the survey made for him by O. H. Delano and that portion of the certificate sought to be appropriated to and merged in the survey made by Delano."

[8] We think it should be held that, by the terms of the deed to Ashworth, Chesson intended to and did partition the certificate, conveying specifically that tract of land and that proportion of the certificate by virtue of which it was located, which had been surveyed for Chesson by Delano, so that in case the survey on which it was located was void, then Ashworth could relocate it for himself on other unappropriated lands. Ash-

worth had the right to follow that portion of the certificate conveyed to him by Chesson to the land subsequently relocated in Jack Young county, and its relocation inured to his benefit, although the patent may have been issued in the name of the original holder of the certificate. Humphreys v. Edwards, 89 Tex. 512, 517, 36 S. W. 333, 434. There is nothing in the record to show at whose instance the certificate was lifted from the 392-acre tract and located in Jack Young county, nor who claimed and exercised ownership over same when so located, nor to show that Ashworth did not assert his claim thereto and take action to recover same.

The sale to Ashworth of the land included the sale of that proportion of the certificate under which it was located. The title to the land failing because located on prior titled land, Ashworth had the right to relocate the certificate upon other unappropriated lands, and lands so located would follow the ownership of the certificate. Robertson v. Du Bose, 76 Tex. 1, 13 S. W. 300; Jones v. Lee, 86 Tex. 37, 22 S. W. 386, 1092.

If at the time Chesson conveyed to Ashworth a part of the certificate, no part of the certificate had been located, it is well settled that either party had the right to sell or locate his part of the certificate without creating a tenancy in common with that of the owner of the other part of the certificate. Glasscock v. Hughes, 55 Tex. 461; Roller v. Ried, 87 Tex. 69, 26 S. W. 1060. But the undisputed evidence is that, four years prior to his deed to Ashworth, Chesson had actually merged in and appropriated the remainder of the certificate to the 262-acre survey made for him by Armstrong in Orange county in 1842, which is the land here claimed by interveners as heirs of Jesse Ashworth. If Chesson had assigned to Ashworth a portion of the certificate, without reference to any particular tract of land, and the entire certificate had been located in one body, the owners would have been tenants in common, or if the Chesson survey located in Orange county by Armstrong (the 262 acres) had not been made when the deed made to Ashworth and the location on the certificate made by Delano (the 392 acres) had been lifted and the entire certificate subsequently located in one body, then Ashworth would have been a tenant in common with Chesson to the extent of his interest in the 640 acres. The same rule would apply if the 262-acre survey in Orange county made by Armstrong had been lifted and the entire certificate relocated in one body. Miller v. Gist, 91 Tex. 335, 43 S. W. 263. But none of these conditions exist here, and the cases cited by interveners do not hold contrary to this rule, but in each case cited by them the transferee of the certificate or proportionate part of the certificate followed and traced his portion of the certificate into the particular land sought to be recovered. See Abernathy v. Stone, 81 Tex. 434, 16 S. W. 1102.

Other questions are presented and have been considered, but, as none of them show reversible error, they are all overruled.

The judgment should be affirmed, and it is so ordered. Affirmed.